**Willard Clifford JORDAN, Petitioner,**

v.

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

Civ. A. No. 67–C–5–R.

United States District Court
W. D. Virginia,
Roanoke Division.

Feb. 22, 1967.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court upon a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, by Willard Clifford Jordan, a state prisoner, and it is filed *in forma pauperis*.

Respondent is now detaining petitioner pursuant to a judgment of the Hustings Court of the City of Roanoke of May 27, 1965, wherein petitioner was sentenced to serve a term of seven years in the penitentiary, having been convicted of grand larceny.

The record shows that following the above mentioned conviction, petitioner, by his court appointed attorney, filed a timely petition for a writ of error to the said judgment in the Supreme Court of Appeals of Virgina. Jordan v. Commonwealth, 207 Va. 591, 151 S.E.2d 390. On November 28, 1966, the Virginia high court entered an order affirming the Hustings Court order for reasons stated in writing and filed with the record.

Petitioner now comes to this federal district court alleging as his grounds for relief the identical grounds which he presented to the Supreme Court of Appeals in his petition for writ of error.

■ We must determine initially whether all the petitioner's available state remedies have been exhausted before coming to this court. Since the petitioner has presented all of his present allegations to the highest state court in Virginia, the question becomes simply this: is it necessary now for petitioner to present these same allegations to the Virginia courts through the collateral procedure of state habeas corpus. We think not. In Grundler v. State of North Carolina, 283 F.2d 798 (4th Circuit, 1960), the same question arose. In that case a petitioner had presented his allegations to the state's highest court on appeal and, finding himself still aggrieved, he filed a habeas corpus petition next in the federal district court. The respondent opposed the petition alleging failure to exhaust all state remedies. The Fourth Circuit said at page 800:

> If a question is presented and adjudicated by the state's highest court once, it is not necessary to urge it upon them a second time under an alternate procedure. This was expressly held in Brown v. Allen, 1953, 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469.

Thus we find that the petitioner has exhausted all of his available state remedies as required by 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

We have studied the record and find that the petitioner's conviction grew out of a factual situation which was found and written up quite accurately by the Virginia Supreme Court of Appeals. Here follows that statement (omitting footnotes):

> Early on the morning of March 13, 1965, Roanoke City Police Officers E. B. Hamblett and W. L. Bowling were patrolling the northwest section of the city. As they approached Starland Bowling Lanes on Shenandoah avenue the lights of their automobile were turned off as was customary, and they drove into Starland's parking lot for a "routine check" of the property. Starland had been closed and was "under Government supervision". There were signs posted on the building which read "[N]o trespassing Government property". Adjacent to the bowling alley and surrounded by an eight-foot cyclone fence is the Macke V.C.S. Vending Corporation building which was later discovered to have been burglarized.

> As Hamblett drove the vehicle under a light in Starland's driveway, Bowling spotted defendant running on Starland's property adjacent to the building. Because of defendant's suspicious conduct Hamblett chased defendant across a field toward an abandoned "go-cart track". He called for defendant to halt and upon his failure to comply fired a warning shot in the air. Defendant ran into a fence surrounding the track which "knocked him back and he jumped back and broke the fence." He surrendered inside the fence and was brought back to the police car. Although the weather was "mild", defendant was attired in "coveralls" and was wearing cotton gloves.

> Defendant told the officers that he was running because they "excited him"; that he left the highway and went on the Starland property for "physical purposes"; that he was cold and was "trying to find a place to sleep"; that his home was in Florida; that he had hitchhiked from West Virginia and had just arrived in Roanoke; and that he owned a 1955 Buick with Florida license tags which was parked at a motel where he was staying "up the road about a couple of miles." Defendant was placed under arrest at the scene by Officer Bowling. Hamblett was asked on direct examination why defendant was arrested. He testified "Well he was on Government property." After defendant's arrest, a search of his person revealed a wool-

en mask of a type generally used by skiers which completely covers the head, except for eye, nose and mouth openings, and also a "Wittenburg Sandwich Machine wrench" which is specially designed for the adjustment and repair of vending machines. This tool was later positively identified as having been taken from a locker drawer in the Macke building.

Before leaving the scene, the officers made a casual outside inspection of the buildings in the vicinity, but saw no evidence of an entry. The officers, accompanied by defendant, attempted to locate defendant's motel and Buick automobile. The search was futile and defendant was taken to police headquarters where he was docketed at 4:41 a. m. for "vagrancy" and held for "investigation." Hamblett and Bowling immediately returned to the scene to make a thorough check of the premises. They arrived there about 5 a. m. and proceeded to trace "the same route we had taken when we arrested Mr. Jordan."

The officers found "evidence of where someone had climbed the fence" which separated the Macke property from the Starland property. A small part of the fence at its base had been pushed up. An empty money bag was discovered close to and inside the fence. In the grass on the Starland side of the fence the officers found a money bag which contained between forty and fifty dollars in silver. A similar amount in coin was found scattered along the fence toward the Starland driveway.

An official of Macke was called to the scene and a search of the interior of the building disclosed that the building had been burglarized. It was ascertained that entry had been accomplished through a small rear window that was very difficult to see from the outside. On the inside, holes had been punched through two cinder block walls to gain entry to the room where the safes were located. A large double door "wall safe" and a smaller safe were found to be badly damaged and the doors open. A Macke official testified that approximately $11,000 had been taken of which 85 percent was in coin, and that a coin sorter valued at $1,000 was also missing.

Lieutenant Thomas of the Roanoke detective bureau, who was in charge of the investigation, arrived at the scene at 6:30 a. m. He testified that he found near the fence three metal coin cans, two wheeled dollies which Macke used on the inside of its building to move freight, and also truck tracks on Starland's side of the fence. Immediately after the investigation on the morning of March 13, Lieutenant Thomas charged defendant with the offense of statutory burglary.

The clothing defendant was wearing at the time of his arrest and specimens of safe insulation and paint chips taken from the safes, mortar and cinder block chips taken from the floor where the partitions were knocked out, were each individually packaged, sealed and forwarded by the Roanoke Police Department to the Federal Bureau of Investigation laboratory for analysis and comparison. Richard W. Flach, an FBI laboratory technician and F. L. Edwards, an FBI agent assigned to the spectrographic unit, after qualifying as experts, testified in detail as to the results of their respective analyses. Flanch stated that the safe insulation, cinder block chips and mortar found on defendant's clothing were of the same consistency as the samples forwarded. Edwards testified that the paint chips removed from one of Macke's safes matched paint fragments found on defendant's clothing.

The defendant neither testified nor offered any evidence in his behalf.

The petitioner urged fourteen grounds for relief in the Supreme Court of Appeals and presents the same fourteen grounds here. They are essentially as follows:

(1) The arrest was unlawful in that it was made without probable cause; (2) the search and seizure which followed the

illegal arrest was illegal; (3) the petitioner was interrogated without first being advised of his rights; (4) witness Edwards was improperly qualified as an expert; (5) the trial court erred in refusing to strike the evidence of the Commonwealth; (6) the court erred in giving and in refusing certain instructions; (7) the court erred in failing to set aside the verdict which convicted him of grand larceny because of insufficient evidence and because the jury was not instructed on the elements of grand larceny and petit larceny; (8) that petitioner's rights were infringed when he was kept in jail under a prohibitive amount of bail; and (9) the trial court erred in failing to set aside the verdict of the jury as contrary to the law and evidence.

Having maturely considered the record in this case, we feel that there are no controlling factual questions still in dispute and we feel that nothing could be gained by a plenary hearing. We therefore proceed now to render our opinion and judgment.

■ The first contention, as noted above, is that the petitioner's arrest was unlawful in that the officer did not have an arrest warrant; that petitioner did not commit a misdemeanor in the officer's presence; and that the officer did not have probable cause to believe that he had committed a felony. We find that the arrest was lawful. The facts show that when the officers arrived on the scene with their lights turned out, they saw the petitioner running through the parking lot of the Starland Bowling Lanes, which premises were marked conspicuously by signs which read: "no trespassing, Government property." These signs were posted on the Starland building. This act would constitute, under Virginia Code § 18.1–173, a misdemeanor for trespassing since the petitioner had no permission to be on the land.

■ Furthermore, the petitioner did not stop running even when the officer fired in the air. The fact that the officers did not have a warrant for the arrest we do not consider significant in light of the other facts. Under the general law of Virginia a law enforcement officer, such as the policeman in the instant case, has the right to make an arrest without a warrant for a misdemeanor committed in his presence. He also has the right to make an arrest without a warrant when he has reasonable cause to believe that the arrested person has committed a felony. See Muscoe v. Commonwealth, 86 Va. 443, 10 S.E. 534 and Byrd v. Commonwealth, 158 Va. 897, 164 S.E. 400. We find from the facts that a misdemeanor was committed in the presence of the officers and that the officers had reasonable cause to believe that a felony had been committed by the petitioner. Thus the arrest without a warrant is valid on two grounds.

■ It follows that because the arrest was lawful, the officers had the right to make an incidental search of the petitioner's person and evidence obtained as a result of this search was admissible. This was the holding of the Virginia Supreme Court of Appeals and with it we concur. Draper v. United States, 358 U.S. 307, 310–311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

■ The next contention of petitioner is that he was interrogated without first being advised of his right to counsel. The law is now clear that as of March 13, 1965, when the questioning in issue took place the Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) decision was the guiding law. It required that a person be advised of his right to remain silent but it did not require that the suspect be advised of his right to counsel when he did not ask for a lawyer. It only required that an attorney be obtained for the suspect if he requested one. We are satisfied from Captain Cochran's uncontradicted testimony in the record that petitioner was advised of his right to remain silent and further that he did not request that an attorney assist him. Thus Captain Cochran's testimony was admissible at trial to show what the petitioner told him while being questioned in jail. The guidelines of Miranda v.

State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) which require that a suspect be advised of his right to counsel even if he does not ask to see a lawyer were expressly not applicable in 1965, as stated in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■ Petitioner alleges next that witness Edwards was improperly qualified as an expert. As the Virginia Supreme Court of Appeals stated at page 395 of its opinion in 151 S.E.2d, after reciting the qualifications which Mr. Edwards showed through his testimony.

As this court has many times said, "the question of the qualification of a witness to speak as an expert lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness was not qualified." Ames & Webb, Inc. v. Commercial Laundry, 204 Va. 616, 621, 133 S.E.2d 547, 550.

This court finds the position of the Virginia Supreme Court of Appeals to be a reasonable one. And in the case at hand we find that there was no abuse of the above mentioned discretion by the trial court.

■ Petitioner's next allegation is that the trial court erred in refusing to strike the evidence of the Commonwealth. The record certainly shows adequate evidence on which to base a conviction and we cannot see that the trial court committed any error here.

On his next allegation, petitioner contends that the trial court committed error by granting some specified instructions and refusing others. Suffice it to say that we have read all the instructions in question and we have studied the reasons which the Virginia Supreme Court of Appeals gave on pages 396–397 of 151 S.E.2d of its opinion for refusing to find error in the trial court's instructions. These reasons we find logical and well based in law. We find that there was no error in these instructions.

■ We also find no merit in petitioner's next contention that the trial

court erred in failing to set aside the verdict which convicted petitioner of grand larceny because of insufficient evidence and because the jury was not instructed on the elements of grand larceny and petit larceny. The record contains, in the opinion of this court, adequate evidence to support a verdict of grand larceny. Additionally, the fact that the jury was not given specific instructions on the elements of grand larceny does not appear to this court to be error. The indictment charged the petitioner with breaking and entering the Macke storehouse with intent to steal certain money and enumerated articles of a value of about twelve thousand dollars ($12,000). It went on to charge the actual taking of these goods and money. Such an indictment by the authority of Stapleton v. Commonwealth, 140 Va. 475, 124 S.E. 237 (1924) is sufficient to support a conviction for larceny.

Furthermore, the jury was told when sworn that it could find the petitioner guilty of statutory burglary, grand larceny or petit larceny. To this charge no objection was made by the defense attorney and no instruction was offered by him on the elements of grand or petit larceny. Thus no merit appears to us from this contention of petitioner.

■ Next the petitioner alleges that he was kept in jail following his conviction under an excessive bail of ten thousand dollars ($10,000). The amount of bail is a matter which rests with the sound discretion of the court. In light of the fact that this man was from out of state and was already on bond in Florida, as shown in the record, we are convinced that there was no abuse of discretion by the trial court here.

Finally, petitioner alleges that the trial court erred in failing to set aside the verdict of the jury as contrary to the law and evidence. This is an all encompassing allegation which we feel is not supported by any of the above discussed allegations, and is not supported by anything else which we find in the record.

Having found no support for any of the petitioner's allegations and being of

the opinion that he is not being detained illegally for any reason known by this court, we accordingly adjudge and order that the petition for the writ of habeas corpus be dismissed and the writ denied.

A certified copy of this opinion and judgment is directed to be sent to the petitioner and to the respondent.