## Richmond

### Ames & Webb, Incorporated v. Commercial Laundry Company, Incorporated.

December 2, 1963.

Record No. 5607.

Present, All the Justices.

The opinion states the case.

*Maurice B. Shapero* (*William L. Shapero*, on brief), for the plaintiff in error.

*Calvin W. Breit* (*Arthur C. Ermlich; Amato, Babalas, Breit, Cohen, Rutter & Friedman*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Commercial Laundry Company, Incorporated, sometimes hereinafter referred to as the plaintiff, filed its motion for judgment against Ames & Webb, Incorporated, and Virginia Electric & Power Company to recover damages alleged to have been done to the plaintiff's building located at the corner of Hampton boulevard and Twenty-sixth street, in the city of Norfolk, by an excavation adjacent to the plaintiff's premises. The motion alleged that as a direct result of the defendants' negligence in and about the excavation, and in "disregard for the safety of the property of others," the plaintiff's building was damaged. Each defendant filed a general denial of negligence on its part.

There was a trial before a jury, during which the plaintiff took a nonsuit as to the defendant, Virginia Electric & Power Company. The case against Ames & Webb, Incorporated, resulted in a verdict and judgment in favor of the plaintiff for the sum of $25,000. We granted this defendant a writ of error.

In its assignments of error the defendant makes these contentions: (1) The verdict and judgment are contrary to the law and the evidence in that there is no showing that the defendant was guilty of any negligence which was the proximate cause of the damage to the plaintiff's building; (2) the trial court erred in permitting the witness, Hyman Rosenberg, to testify as an expert and answer a hypothetical question propounded to him by counsel for the plaintiff relative to the proper method in which the excavation should have been made; (3) the court erred in not granting the defendant's motion for a mistrial when E. T. Gresham, a witness for the defendant, on cross-examination by counsel for the plaintiff, "mentioned an insurance company" under circumstances which, the defendant says, indicated to the jury that its liability was covered by insurance; (4) the court erred in its rulings on the instructions.

In view of the jury's verdict, approved by the trial court, the evidence will be stated and considered in the light most favorable to the plaintiff.

In July, 1960 the defendant, Ames & Webb, Incorporated, a road building contractor, entered into a contract with the Virginia Department of Highways for the installation of a drainage sewer pipe line along Hampton boulevard and other streets in the city of Norfolk. According to the plans and specifications prepared by the Department, a portion of this sewer line was designed to run along the front of the plaintiff's building which is located on the eastern side of Hampton boulevard. The line which was specified and laid out by the Department required that the center of the pipe line be located in the sidewalk and within 8 feet of the front of the plaintiff's brick building.

While the method of the excavation and the installation of the pipe was not specified, the ditch was to be of sufficient depth and width to contain a concrete pipe line 48 inches in diameter and resting on a 24-inch stone bedding. For this purpose the defendant undertook to excavate a ditch 12 feet deep and about 8 feet wide along and near the front wall of the plaintiff's building.

The soil in this area is sandy and at a depth of approximately 10 feet becomes mixed with water. During the progress of the excavation it was necessary to brace or shore up the sidewalls of the ditch to prevent their caving in and dislodging the soil under the foundation of the plaintiff's building.

According to the evidence for the defendant, it followed the usual

and accepted method of excavating this ditch and bracing the side-walls in soil of this nature and under similar conditions. First, two trenches, each about 2 feet deep and 8 feet apart, were dug along the proposed sides of the ditch. In these trenches were inserted wooden braces or "walers" which were kept apart by cross braces for the proposed width of the ditch. Then sections of metal inter-locking sheet piling, from 15 to 20 feet long and held in line by the "walers," were driven into the ground for the purpose of retaining the soil on each side of the proposed excavation. When this metal piling had been thus installed, the 8-foot area between them, con-stituting the width of the ditch, was dredged out with a "clamshell bucket." After the pipe had been laid and the ditch refilled with earth, the metal piling was withdrawn.

However, there is evidence on behalf of the plaintiff that the exca-vation was not done in what the defendant's witnesses said was the proper, customary and approved method. Witnesses for the plain-tiff testified that the excavation reached a depth of from 5 to 6 feet before piling was installed, and that this was improper. There is other evidence that the piling should have been installed before any excavation was begun. There is also evidence that when the walls of the building showed signs of cracking, the metal piling should not have been withdrawn until the movement of the soil under the foundation had ceased.

The work in the vicinity of the plaintiff's building was started on November 25 and completed on December 3, 1960. There is evidence on behalf of the plaintiff that during the early stages of the work the plaintiff's officers notified the defendant that because of the excava-tion the building was being damaged and requested that the de-fendant brace or shore it up. This request was ignored.

It is undisputed that as the excavation work progressed the damage to the plaintiff's building increased. The earth beneath the front wall foundation was dislodged and large cracks developed in the wall. The damage to the wall was so extensive that it became neces-sary that it be torn down and replaced. Before this could be done it was necessary that the foundation be reinforced with piling. There was other serious damage to the building which need not be detailed. Suffice it to say that under the supervision of a local architect the building was repaired at an expense of approximately $25,000. There is no contention on this appeal that this amount was excessive.

Section 1301.2 of the ordinance of the city of Norfolk with respect

to the support of adjoining buildings and structures reads in part as follows:

"When an excavation extends more than 5 feet below the established curb grade nearest the point of excavation under consideration, the one causing the excavation to be made, if given the necessary license to enter the adjoining premises, shall provide at his own expense the underpinning and protection required by that part of the excavation which extends to a depth greater than 5 feet below the established curb grade nearest the point of excavation under consideration, whether or not the existing footings or foundations extend to the depth of 5 feet or more below curb grade; or he may shore or brace the sides of his excavation so as to prevent effectively any soil movement into his excavation. * * * "

Pursuant to this ordinance, the defendant gave the plaintiff written notice of the intended excavation and requested permission to enter the plaintiff's property, "if necessary, to protect the same from damage." Although this permission was promptly granted, the defendant took no steps to provide the underpinning and protection to the plaintiff's building required by the terms of the ordinance, or otherwise protect it from damage. There is also evidence that the defendant did not shore or brace the sides of the excavation so as "to prevent effectively" the soil movement. Indeed, it is undisputed that the movement of the soil incident to the excavation caused the damage to the building.

It is clear from the related evidence that there was ample support for the finding of the jury that the defendant was guilty of negligence which proximately caused the damage to the plaintiff's building. The jury were warranted in finding that the excavation was not done in a proper or careful manner and that the sidewalls of the ditch were not sufficiently braced to prevent the movement of the soil from under the foundation of the building. Moreover, the jury were warranted in finding that the defendant was negligent in not shoring or bracing the building after it had been notified of the damage and requested to take this precaution.

■ Next, complaint is made that the lower court erred in permitting the witness, Hyman Rosenberg, to testify as an expert and answer a hypothetical question relative to the proper method in which the excavation should have been made.

This witness is a resident of Pittsburgh, holds a degree in architecture from Carnegie Institute of Technology, and has practiced his

profession in the designing and construction of buildings for thirty-five years. While he had had no experience in construction work in the Norfolk area, he was familiar with the excavation requirements in sandy soil in other localities. The characteristics of such soil, he said, were generally the same everywhere. Upon this showing the court properly ruled that he was qualified to testify as an expert. As we have frequently said, the question of the qualification of a witness to speak as an expert lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness was not qualified. *Swersky* v. *Higgins*, 194 Va. 983, 985, 76 S. E. 2d 200, 202, and cases there cited.

■ Over the objection of counsel for the defendant, this witness was permitted to testify, in answer to a hypothetical question, that the sheet metal piling which had been installed by the defendant along the sides of the ditch should not have been removed but should have been retained in the ground permanently. The contention is made that the hypothetical question propounded to the witness, and printed in the margin,[1] did not include all of the circumstances shown in the evidence with respect to this particular work.

According to the defendant's brief, the "principal omission" was "the failure to include in the question the uncontradicted testimony that sheet metal piling from 15 to 12 feet long and 3/8th inches in width was installed by appellant on the edge of what was going to be and was, the excavation, and that the sheet piling would be approximately five feet from the building."

It is, of course, true that a hypothetical question to an expert witness must embody all the material facts which the evidence tends to prove, affecting the question upon which the expert is asked to express an opinion. *Tate* v. *Chumbley*, 190 Va. 480, 496, 497, 57 S. E. 2d 151, 159. As we there said, this principle must be reasonably and sensibly applied with reference to the status of the proof.

While the suggested details might properly have been included in the question, their omission did not require a rejection of the question

---

[1] "Assuming that an excavation was made in front of that building on Hampton Boulevard for a depth of between ten and twelve and a half feet with a width of eight feet wherein the center line of that ditch was nine feet from the wall of the building or five feet from the wall of the building at its nearest point, and assuming further that the building was resting on a sandy-type soil and that the excavation adjoining this building was of a sandy nature, and assuming further that the party causing the excavation knew of these facts before he excavated, what would be the proper method for that excavation to have been made?"

which otherwise contained all material facts. *Norfolk & Western Ry. Co.* v. *Spears*, 110 Va. 110, 116, 65 S. E. 482.

Moreover, it is apparent from the colloquy which took place concerning the proper framing of the question that the witness was familiar with these details and that his answer was predicated thereon.

E. T. Gresham, president of a local contracting firm, was called as a witness for the defendant. He testified that he had examined the plaintiff's building to determine the extent of the damage done to it during the excavation project. On cross-examination he was asked by counsel for the plaintiff by whom he was sent there for the purpose of making his examination. He replied, "American Mutual Insurance Company." Whereupon counsel for the defendant asked for a mistrial on the ground that the answer of the witness was prejudicial to its interest in that it indicated to the jury that the defendant's liability on the project was covered by insurance. The denial of the motion is the basis of the defendant's next assignment of error.

There is no substance to this assignment. In the first place, there is no indication, as claimed by the defendant, that the purpose of the question was to develop such insurance coverage. On the contrary, during the previous examination of another witness it had been thoroughly understood and agreed between the court and counsel that the question of insurance coverage should not be disclosed to the jury. There is no indication that in examining the witness, Gresham, counsel for the plaintiff intended to violate that understanding. The evident purpose was to develop that the defendant had requested the witness, Gresham, to make the examination and that he was perhaps biased or prejudiced in its favor. Indeed, the defendant's answer to certain interrogatories previously propounded to it indicated that Gresham had made the examination at its request.

In the next place, there was no disclosure by the witness of the nature of the interest of the named insurance company in the project. There was no suggestion or indication that it covered the liability of the defendant in the performance of its duty. See *Simmons* v. *Boyd*, 199 Va. 806, 814, 102 S. E. 2d 292, 297.

Again, the contract offered in evidence by the defendant, while not mentioning this particular insurance company, required the defendant to carry public liability insurance on at least a part of the project.

Finally, there is no showing that the mentioning of the insurance company was prejudicial to the defendant. The amount of the verdict, $25,000, was the same as the amount of damages which the plaintiff proved it had suffered. There is no claim that the award was excessive.

■ The final contention of the defendant is that the trial court erred in granting, at the request of the plaintiff, Instruction P-3, printed in the margin.[2]

Here the argument is that the instruction was misleading in that it failed to tell the jury that under the terms of the ordinance the defendant had the right to elect either to provide, at its own expense, the underpinning and protection to the plaintiff's building, or in the alternative, to brace effectively the sides of its excavation, but not to do both. The ready answer to this argument is that the instruction was not objected to on that ground and hence such objection will not be considered on this appeal. Rule 1:8.

On the whole, we find no error in the proceedings and accordingly the judgment is

*Affirmed.*

---

[2] "The court instructs the jury that under the evidence in this case the defendant was required to comply with the Building Code of the City of Norfolk, Virginia, Section 1301.2, entitled 'Support of Adjoining Buildings and Structures' as introduced in this case; and its failure to do so is actionable negligence. If you find from a preponderance of the evidence that the defendant failed to comply with said city ordinance in any material respect and that failure was the proximate cause of the damage sustained by the plaintiff, then you shall find for the plaintiff."