**Arlington**

GARY WILLIAM KERN

v.

COMMONWEALTH OF VIRGINIA

No. 0097-84

Decided March 18, 1986

---

COUNSEL

John S. Lawrence, for appellant.

Russell C. Williams, Assistant Attorney General (William G. Broaddus, Attorney General), for appellee.

OPINION

**DUFF, J.**—Gary William Kern was convicted of grand larceny of four rings from the home of Mrs. Edna Gardner. The issues presented are whether the trial court erred in finding that Marcey Roe was qualified to give her opinion as to the value of a gemstone; whether there was sufficient evidence to find that the value of the rings was over $200; and whether Kern was denied his right of allocution. We find no merit in any of the issues presented and affirm the conviction.

Kern contends that because the Commonwealth's expert witness, Marcey Roe, had no formal training or education as an appraiser, she was not qualified to testify as an expert in jewelry appraisals and to express an opinion as to the value of the gemstones. The evidence showed that Roe, a member of the Accredited Appraisers Association, was employed by Fleischer's Jewelers as an appraiser and gemologist. She studied gemology in 1975 at the Columbia School of Gemology in Silver Spring, Maryland. Later she studied gemology in three correspondence courses given

by the Gemological Institute of America and in 1985, was certified as a gemologist. Roe continued working in a jewelry store after becoming a gemologist but did not actually begin appraising until April, 1984. At the time of her valuation in this case, she had appraised approximately seventy-five to one hundred jewelry items, including both gemstones and gold jewelry. Regarding the difference between a gemologist and an appraiser, Roe testified that although there is no formal training to become an appraiser, to be an appraiser, one must also be a gemologist.

Roe appraised the rings in question and determined that the settings were eighteen karat gold and that the most valuable stone was a pyrogarnet. She testified, over objection, that the pyrogarnet had a market value of $800.

The standard of review on appeal where the admissibility of expert testimony is challenged is whether the trial court abused its discretion. *Thorpe* v. *Commonwealth*, 223 Va. 609, 614, 292 S.E.2d 323, 326 (1982). It is well established that no formal training or education is necessary to qualify as an expert. Expertise may be acquired through an avocation or a hobby. C. Friend, *The Law of Evidence in Virginia* § 215, at 461 (2d ed. 1983). Knowledge may be the product of home study or experience, or both. *Noll* v. *Rahal*, 219 Va. 795, 801, 250 S.E.2d 741, 745 (1979). All that is necessary for a witness to qualify as an expert is that he have "sufficient knowledge of his subject to give value to his opinion," *Norfolk & Western Railway Co.* v. *Anderson*, 207 Va. 567, 571, 151 S.E.2d, 628, 631 (1966), and that he be better qualified than the jury to form an inference from the facts. C. Friend, *The Law of Evidence in Virginia* § 215, at 461 (2d ed. 1983).

We find, based on these principles, no abuse of the trial court's discretion in allowing Roe to testify as an expert in jewelry appraisals. Her education and training as a gemologist and her experience as an appraiser qualified her to valuate the gemstone. Any argument that she lacked experience in the field went to the weight that the trier of fact gave to her opinion, not to its admissibility.

Kern further argues that Roe's reliance on an unidentified brochure to assign a market value to the gemstone made her opinion inadmissible hearsay. Roe testified that after identifying the stone and determining its size and quality, she obtained a per-carat

value from a brochure listing current market value according to quality. Roe stated that the brochure was one of several published in her profession, and that its use was standard appraisal practice.

While acknowledging that an expert may not base her valuation on hearsay opinion, the Commonwealth argues that the brochure contained facts, not opinions. Roe was not merely relaying information from the brochure to the court. To arrive at her valuation of the stone, she examined it and determined the number of carats and its quality. She then applied her firsthand knowledge of the stone to the market data in the brochure as to current per-carat value. Her opinion was formed in part by out-of-court data relied on by other experts in the field. However, no expert could be expected to have personal knowledge of all the data that interact to form a market price.

We recognize that in Virginia, an expert witness generally has not been permitted to base his opinion on facts not in evidence. *Ortiz* v. *Barrett*, 222 Va. 118, 130, 278 S.E.2d 833, 839 (1981). In a recent case, *Simpson* v. *Commonwealth*, 227 Va. 557, 318 S.E. 2d 386 (1984), the Supreme Court reiterated this rule's application in criminal cases and stated that an expert's opinion must be confined to the expert's knowledge of facts or facts in evidence assumed in a hypothetical question. At first glance, it would appear that the Court's reasoning in *Simpson* would preclude Roe's reliance on the market value brochure to assign a value to the gemstone in the instant case. It is our opinion, however, that *Simpson* is not controlling and can be distinguished on the facts. In *Simpson*, the expert pathologist testified regarding his opinion of the events leading to the death of the victim. His opinion was based, in part, on the victim's hospital records, which were not in evidence. The Court found that the expert's reliance on the hospital records was contrary to the rule in Virginia. The expert's opinion was admitted, however, because the Court found a significant factual basis for its admission without reference to the hospital records.

The hospital records in *Simpson* were prepared in the course of the treatment of the victim and were relied on by the expert to form an opinion as to the sequence of events leading to the victim's death. The market data brochure relied on by Roe in the present case, however, was not prepared for the sole purpose of arriving at a specific opinion at issue in this case. The brochure

was prepared as a collection of data customarily available to gemstone appraisers in general. It was analogous to a medical treatise consulted by an expert or to a real estate record consulted by a real estate appraiser. The objective nature of the current market data contained in the brochure lends credence to the trustworthiness of the information. We find no error in Roe's reliance on the market value brochure to arrive at a current market value for the gemstone in question.

Kern next contends that the court committed error in disregarding Roe's testimony that the wholesale value of the gemstone, which weighed over eighteen carats, was $5 per carat and in disregarding the opinion of other witnesses as to value. Mrs. Gardner, the owner of the rings, testified that she paid $200 for them in 1966. Kenneth Duncan, manager of the Old Town Coin and Jewelry Exchange, testified that he purchased the rings from Kern for $124. Roe testified, however, that the *market* value of the pyrogarnet in one ring was over $800. Her valuation excluded the value of the gold setting and the other three rings.

Roe's testimony that the market value of the gemstone was over $800 is sufficient to support the court's finding that the Commonwealth established that the value of the stolen jewelry was $200 or more. Code § 18.2-95. We affirm the trial court's finding as to value.

Finally, Kern contends that he was not afforded his right of allocution at the time of sentencing. Although the transcript of the trial does not reflect that he was afforded allocution, the sentencing order entered by the court indicates the contrary. A recital of proceedings in a judicial order is an "absolute verity and it is not subject to collateral attack." *Kibert* v. *Commonwealth*, 216 Va. 660, 662, 222 S.E.2d 790, 791 (1976). Where a defendant does not object to the accuracy of an order within 21 days after its entry, an appellate court may "presume that the order, as the final pronouncement on the subject, rather than a transcript that may be flawed by omissions, accurately reflects what transpired." *Stamper* v. *Commonwealth*, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979), *cert. denied*, 445 U.S. 972 (1980).

Because we find no reversible error, the judgment of the trial court is

*Affirmed.*

Benton, J., and Cole, J., concurred.