**Richmond**

CHARLES RAY NICHOLS, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1349-85

Decided June 7, 1988

COUNSEL

Robert D. Eisen (Stanley E. Sacks; Sacks & Sacks, on brief), for appellant.

David A. Rosenberg, Assistant Attorney General (Mary Sue Terry, Attorney General; Margaret Poles Spencer, Assistant Attorney General, on brief), for appellee.

OPINION

**COLE, J.** — The defendant, Charles Ray Nichols, Jr., appeals his conviction of conspiracy to distribute cocaine in violation of Code §§ 18.2-256 and 18.2-248, contending that: (1) his sixth amendment right to confrontation was violated when the trial court did not strike the direct testimony of a co-conspirator after he refused to answer a question on cross-examination; and (2) the trial court erred when it allowed a narcotics investigator to testify concerning the significance of a sheet of paper containing names, numbers and computations found in the defendant's home during a search. We find no error and affirm the conviction.

I.

The defendant was indicted for conspiracy to distribute cocaine in violation of Code §§ 18.2-256 and 18.2-248. At trial, the chief prosecution witness was Gregory Nunn, a co-conspirator who had pleaded guilty to possession of cocaine. Nunn testified that he would purchase cocaine in Florida, bring it to the Tidewater area and sell it to the defendant through another co-conspirator, Doug Jarvis. On cross-examination, defense counsel asked Nunn who provided him with the cocaine in Florida. Nunn refused to answer because of death threats to his family. The court admonished him that if he did not answer the question, he could be held in contempt. Nunn still refused to answer. At the close of Nunn's testimony, defense counsel moved to strike his testimony based on his

refusal to reveal his source of cocaine in Florida. The court over-ruled the motion.

The Commonwealth called Lieutenant R.E. Walsh as an expert witness. Walsh, a narcotics investigator with the Norfolk Police Department, testified that he had eight years of experience as a narcotics investigator and that, during that time, he had conducted "hundreds" of searches. According to Walsh, in eighty to ninety percent of the searches, drug records were discovered. Walsh was then shown a sheet of paper containing names, numbers and computations found during a search of the defendant's home and asked whether, in his opinion, it was a record of drug transactions. He said that it was. In his opinion, it was a record of ounces "fronted" and to whom as well as a running balance of the ounces on hand. He based his conclusion on the "oz." appearing on the paper which is an abbreviation for "ounce," the standard weight unit used to measure cocaine, the "1350" figure which is an average wholesale price for an ounce of cocaine, and the similarity of the notations to drug records found in other searches. The defendant objected to the qualification of Walsh as an expert and the necessity of expert testimony. The objection was overruled. The defendant was subsequently convicted and sentenced to ten years' imprisonment and a $5,000 fine. This appeal followed.

## II.

The sixth amendment of the Constitution guarantees an accused's right to the opportunity of cross-examination in criminal proceedings. *Pointer v. Texas*, 380 U.S. 400, 403-04 (1965). This right is similarly guaranteed by the Virginia Constitution. Va. Const. art. I, § 8; *Moore v. Commonwealth*, 202 Va. 667, 669, 119 S.E.2d 324, 327 (1961). "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).

The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair oppor-

tunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.

*Id.* at 21-22.

 Where a witness, after his testimony in chief, refuses completely to submit to cross-examination, a defendant's right of confrontation is violated and the witness's direct testimony should be stricken. But where a witness refuses to answer only one or a few questions on cross-examination, the right to confrontation is not necessarily violated. Whether the direct testimony should be stricken as violative of the confrontation clause is within the discretion of the trial court, considering factors such as the motive of the witness, the materiality of the answer, and the effectiveness of the cross-examination. *See Stephan v. United States*, 133 F.2d 87, 97 (6th Cir. 1943); 5 J. Wigmore, *Evidence* § 1391 (Chadborne rev. 1974).

In this case, Nunn refused to reveal his source of cocaine in Florida. His motive for refusing to answer was purportedly because of threats he had received against his family. The judge could reasonably believe Nunn's reason in light of the fact that Nunn had answered in detail every other question propounded to him by either the Commonwealth or the defendant. In addition, Nunn's source of cocaine was not relevant to the question of the defendant's guilt. Regardless of the source of Nunn's cocaine, he repeatedly sold it to Nichols through Jarvis, and this was sufficient to establish Nichols' guilt of conspiracy to distribute cocaine. Finally, the defendant was given an opportunity on cross-examination and during closing argument to expose this infirmity "thereby calling to the attention of the factfinder the reasons for giving scant weight" to Nunn's testimony. *Fensterer*, 474 U.S. at 22. Therefore, under the circumstances of this case, we do not find that the trial court abused its discretion in refusing to strike Nunn's direct testimony.

## III.

██ Whether expert testimony is admissible on a certain issue is within the discretion of the trial court. *Kern v. Commonwealth*, 2 Va. App. 84, 86, 341 S.E.2d 397, 398 (1986).

An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation in a special calling give the expert knowledge of a subject beyond that of persons of common intelligence and ordinary experience. The scope of such evidence extends to any subject in respect of which one may derive special knowledge by experience, when his knowledge of the matter in relation to which his opinion is asked is such, or is so great, that it will probably aid the trier in the search for the truth.

*Neblett v. Hunter*, 207 Va. 335, 339-40, 150 S.E.2d 115, 118 (1966). However, "[i]t is settled law in Virginia that expert evidence is inadmissible on matters of common knowledge or those as to which the jury are as competent to form an intelligent and accurate opinion as the witness." *Grasty v. Tanner*, 206 Va. 723, 726, 146 S.E.2d 252, 254 (1966).

■ The defendant asserts that expert testimony was not appropriate in this case because the jury was as capable as Lieutenant Walsh of drawing conclusions concerning the purpose of the notations. We disagree. The subject of the expert testimony, a drug dealer's record keeping procedures, is not within the realm of knowledge of the average juror. *Cf. United States v. Carson*, 702 F.2d 351, 369 (2d Cir.), *cert. denied*, 462 U.S. 1108 (1983) (expert testimony appropriate on meaning of furtive activities of alleged drug dealer); *United States v. Borrone-Iglar*, 468 F.2d 419, 421 (2d Cir. 1972) (expert testimony appropriate on meaning of narcotics vernacular); *People v. Bateman*, 57 Cal. App. 2d 585, ——, 135 P.2d 192, 193 (1943) (expert testimony appropriate on meaning of notations and figures contained in records of alleged bookmaker). The trial court could properly conclude that Walsh's testimony would aid the jury in interpreting the notations. Therefore, the trial court did not abuse its discretion in admitting the expert testimony.

■ Even if expert testimony was appropriate, contends the defendant, Lieutenant Walsh was not properly qualified as an expert on drug records. We do not agree. "[T]he question of the qualification of a witness to speak as an expert lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness was not qualified." *Ames & Webb, Inc. v. Commercial Laundry Co.*, 204 Va. 616, 621, 133

S.E.2d 547, 550 (1963). A witness is qualified to speak as an expert where "he possesses sufficient knowledge, skill or experience to make him competent to testify . . . on the subject matter of the inquiry." *Noll v. Rahal*, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979). "All that is necessary for a witness to qualify as an expert is that he have 'sufficient knowledge of his subject to give value to his opinion' and that he be better qualified than the jury to form an inference from the facts." *Kern*, 2 Va. App. at 86, 341 S.E.2d at 399 (quoting *Norfolk & W. Ry. Co. v. Anderson*, 207 Va. 567, 571, 151 S.E.2d 628, 631 (1966)).

Applying these principles to the instant case, we find that the trial court did not abuse its discretion when it qualified Walsh to testify as an expert. Walsh had been a narcotics investigator for eight years and a police officer for twenty-two years. During this time, he had conducted hundreds of drug searches and discovered drug records in ninety percent of those searches. In addition, he had qualified as an expert in the narcotics field on at least three previous occasions. "Any argument that [he] lacked experience in the field [goes] to the weight the trier of fact [gives] to [his] opinion, not to its admissibility." *Id.* at 86, 341 S.E.2d at 399.

The defendant also contends that Walsh's opinion as to the purpose of the recordation was pure speculation and therefore inadmissible. Walsh stated that he was "ninety percent" positive that the paper found was a record of drug transactions. He based his opinion on the "oz." abbreviation, the "1350" figure which he said was an average wholesale price for an ounce of cocaine, the list of names and numbers, the running balance, and the fact that it was found in a home containing a large quantity of drugs and drug paraphernalia. Again, any argument that the basis of his opinion is erroneous goes to the weight the trier of fact gives to his opinion, not to its admissibility.

Finally, we likewise find no merit in the defendant's contention that Walsh's opinion went to an ultimate issue in the case and was therefore precluded. Walsh testified that the paper was a record of drug transactions; the ultimate issue in the case was whether the defendant conspired to distribute cocaine. Therefore, Walsh's opinion did not invade the province of the jury, but only provided circumstantial evidence of cocaine distribution.

For the foregoing reasons, we affirm the judgment below.

*Affirmed.*

Koontz, C.J., and Benton, J., concurred.