COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Felton and Kelsey
Argued at Chesapeake, Virginia


MICHAEL RAY BROWN
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1440-04-1                      JUDGE D. ARTHUR KELSEY
                                                          MAY 17, 2005
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        Junius P. Fulton, III, Judge


          Fay F. Spence, Deputy Public Defender (Office of the Public
          Defender, on briefs), for appellant.

          Robert H. Anderson, III, Senior Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on brief), for appellee.


       The trial court found Michael Ray Brown guilty of burglary and grand larceny.  Brown

appeals his grand larceny conviction, arguing the evidence failed to prove the fair market value

of the stolen property to be $200 or greater at the time of the theft.  We agree and reverse the

grand larceny conviction, remanding solely for sentencing on petit larceny.

                                           I.

       On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  That principle

requires us to "regard as true all the credible evidence favorable to the Commonwealth and *all*

*fair inferences to be drawn therefrom*."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d

755, 759 (1980) (emphasis in original and citation omitted).

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Jackie Heath, a groundskeeper for Nansemond Lawn and Garden, arrived for work one morning and saw Brown "pedaling away on his bicycle" with a leaf blower and hedge pruner. The night before, Heath had stored both tools in a locked shed. An employee of Nansemond Lawn and Garden for a year and a half, Heath had worked in the landscaping business for five years. She used the leaf blower and hedge pruner regularly. Though the tools showed signs of ordinary wear and tear, both were in good working order.

Heath did not buy the tools and did not know what her employer paid for them. Nor had she ever purchased any similar tools. Even so, based on her visits to lawn and garden stores, Heath thought the retail price of replacing the stolen tools with new ones would be "between $300 or $400 brand-new" for the leaf blower and "between $200 to $300 brand-new" for the hedge pruner. At no point in her testimony, however, did she say that the retail price of new tools approximated the original purchase price of the stolen tools. The leaf blower, Heath believed, was less than a year old. She did not know the age of the hedge pruner. As a general rule, Heath estimated, tools of this kind would need to be replaced every two to four years.

At the conclusion of the Commonwealth's evidence, Brown made an unsuccessful motion to strike, arguing the evidence failed to prove the tools had a fair market value of $200 or more at the time of the theft. At the close of the evidence, Brown renewed his motion and the trial court again overruled it. Brown was convicted of burglary and grand larceny. On appeal, Brown contends the Commonwealth failed to prove the property was valued at $200 or more. He does not challenge any other aspect of his larceny conviction.

II.

To convict a thief of grand larceny, the Commonwealth must prove the value of the stolen property was at least $200. See Code § 18.2-95(ii). "This statutorily specified amount is an essential element of the offense, and the burden is upon the Commonwealth to establish that

element by proof beyond a reasonable doubt." Robinson v. Commonwealth, 258 Va. 3, 5, 516 S.E.2d 475, 476 (1999). The relevant value is the "current value" of the stolen items, Dunn v. Commonwealth, 222 Va. 704, 705, 284 S.E.2d 792, 792 (1981) (*per curiam*), "measured as of the time of the theft," Parker v. Commonwealth, 254 Va. 118, 121, 489 S.E.2d 482, 483 (1997); see also Kern v. Commonwealth, 2 Va. App. 84, 88, 41 S.E.2d 397, 399-400 (1986). The fair market value is "the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing." Robinson, 258 Va. at 5-6, 516 S.E.2d at 476 (citation omitted).

The fair market value of a depreciating asset[1] can be established in one of several ways. A lay opinion may be offered which, assuming a proper foundation, may take the form of a direct assertion by the witness of the property's present fair market value. See Crowder v. Commonwealth, 41 Va. App. 658, 664 n.3, 588 S.E.2d 384, 387 n.3 (2003); see also Walls v. Commonwealth, 248 Va. 480, 483, 450 S.E.2d 363, 365 (1994) (applying the lay witness rule to a knowledgeable non-owner). Similarly, a qualified expert may offer an opinion on fair market value. See, e.g., Kern, 2 Va. App. at 85-86, 341 S.E.2d at 398-99 (allowing gemologist to testify as expert on jewelry's market value). Fair market value can also be determined from evidence of contemporaneous purchases in the open market of items of like grade, age, and quality. See, e.g., State v. Downing, 654 N.W.2d 793, 798 (S.D. 2002).

In addition, fair market value can be inferred using generally accepted accounting principles. The typical depreciation equation — original cost basis, less depreciation, equals present fair market value — provides circumstantial evidence sufficient to support a grand

---

[1] We accept it as "common knowledge" that equipment "generally depreciates in value over time" and thus should be subject to depreciation discounts. Lester v. Commonwealth, 30 Va. App. 495, 505, 518 S.E.2d 318, 322 (1999).

larceny conviction.  <u>Dunn</u>, 222 Va. at 705, 284 S.E.2d at 792.  This valuation model allows the factfinder to work backward from the original cost of the item to arrive at the net present value after discounting for deterioration the item shows as it nears the expiration of its useful life.  <u>See</u>, <u>e.g.</u>, <u>State v. Belanger</u>, 325 A.2d 789, 791 (N.H. 1974).

In this case, the prosecution failed to offer any specific lay or expert opinion.  At no point did Heath say the stolen leaf blower and hedge pruner were together worth $200 or more at the time of the theft.  Nor did she offer any evidence of the going price for used leaf blowers or hedge pruners (similar in condition to the stolen tools) from which the value of the stolen tools could be determined.

Instead, Heath focused only on the fair market value of "brand-new" tools.  The prices in retail stores, she recalled, were between $300 to $400 for the leaf blower and between $200 to $300 for the hedge pruner.  She did not attempt to link up the new replacement cost with the original purchase price.  Heath could not do that with the hedge pruner because she had no idea how old it was.  For all she knew, it could have long outlived (however well) its useful life of two to four years — making it valuable for continued use by its owner, but near valueless in the open market for used tools.

As for the leaf blower, Heath's testimony went somewhat further, but still not far enough.  This tool, she believed, also had a replacement cycle of two to four years.  She thought it had been purchased less than a year before, but did not state exactly when.  The overlooked element in her testimony, however, was the absence of any evidence of the original cost of the stolen leaf blower or any basis for assuming the retail price for a new leaf blower approximated the original cost of the stolen leaf blower.

In that way, Heath left an analytical blank in the value equation.  In any given case, it may be entirely possible for reasonable inferences to fill in that blank.  But the evidence must

support the rationality of doing so.  For example, if an item had a new retail purchase price of $2,000 and had been purchased less than a year before the theft, one could easily infer its original cost (less depreciation) to be higher than $200.  In our case, though, the numbers are too tightly clustered to accept that inference beyond a reasonable doubt.  Heath estimated the retail price for a new leaf blower to be between $200 to $400, giving it a $300 midpoint.  She said its useful life would be between two to four years, with a three-year midpoint.  If one were to assume a straight-line depreciation (an assumption highly favorable to the prosecution), a relatively small difference between the *original* purchase cost and the *new* replacement price could easily throw the fair market value figure at the time of the theft above or below $200.

In short, having said nothing to link her estimate of what it would cost to buy a new leaf blower with the original price of the stolen leaf blower, Heath's testimony provided no rational ground for the factfinder to infer the blower's fair market value at the time Brown stole it.[2]

### III.

We reverse Brown's conviction for grand larceny and remand for judgment and sentencing on the lesser-included offense of petit larceny.[3]

Reversed and remanded.

---

[2] When addressing a challenge to the sufficiency of the evidence, we reverse only if the trial court's decision is "plainly wrong or without evidence" to support it.  Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (citations omitted).  Under this standard, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

[3] Ordinarily "the appropriate remedy on appeal is a reversal of the conviction on the greater charge and a remand of the lesser charge for retrial — assuming the Commonwealth, in its prosecutorial discretion, chooses to go forward on the lesser charge."  Crowder, 41 Va. App. at 666, 588 S.E.2d at 388.  In this case, however, Brown requested only a remand for judgment and resentencing on the lesser-included petit larceny charge.