COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


LATOYA YVETTE MITCHELL, S/K/A
  LATOYA MITCHELL Y.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2037-05-1                    JUDGE ROBERT P. FRANK
                                                      NOVEMBER 21, 2006

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                                   Lydia C. Taylor, Judge

                  S. Jane Chittom, Appellate Defender (Virginia Indigent Defense
                  Commission, on briefs), for appellant.

                  Rosemary V. Bourne, Assistant Attorney General (Robert F.
                  McDonnell, Attorney General, on brief), for appellee.


          Latoya Yvette Mitchell, appellant, was convicted by a jury of first-degree murder in

violation of Code § 18.2-32, and use of a firearm in the commission of a felony in violation of Code

§ 18.2-53.1.  On appeal, she contends the trial court erred in admitting the expert testimony of

Investigator Wray because the witness was not qualified as an expert to testify as to defensive

wounds.  For the reasons stated, we affirm the judgment of the trial court.

                                        BACKGROUND

          During the morning of April 15, 2004, appellant and Helen Spain got into an argument.

Later in the day, after several fights, appellant shot Spain in the head.  Spain died shortly

thereafter.  When interviewed by Investigator Wray of the Norfolk Police Department, appellant

gave four different versions of the shooting.

_____

          [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Initially, appellant said that she went to the top of the steps where she saw Spain approaching her with a knife. She told Investigator Wray that when Spain swung the knife she put her arms up over her head to protect herself, demonstrating to Wray the position of her arms. She alleged that she received some scratches on her hand from this exchange. According to appellant, an unknown person then shot Spain.

Appellant then indicated that she saw Spain walking towards her swinging a knife. Appellant stated that she retrieved her gun from her sweatpants, pointed it at Spain, and shot Spain one time.

Appellant's third version was consistent with her second, except that she stated that when Spain approached her in the hallway, someone named Denard Brandy handed her the gun. She told Wray that she racked the gun back in order to scare Spain.

In the final version, appellant told Wray that she was just trying to hit Spain with the gun when it accidentally went off. Appellant told Wray that Spain was no longer swinging at her with the knife and had turned to go into the apartment when she shot her. She alleged that she shot Spain "because she didn't know what she was going into the house to get."

Appellant testified at trial that when she encountered Spain on the balcony, Spain was swinging the knife at her. When asked if Spain touched her with the knife, appellant responded, "Not that I know of as she was swinging." Appellant denied knowing the cause of the cuts on her hand. Appellant testified that she pulled a gun out of her waist, and the gun accidentally went off when she hit Spain with it. Appellant denied that she put her hands above her head to defend herself during the fight and denied telling Investigator Wray that she had done so.

At trial, Investigator Wray, who had fourteen years experience on the police force and nine years experience as a homicide detective, was qualified by the court as an expert in defensive knife wounds. The trial court found that Wray "has more experience than the average

lay person in looking at wounds in attack cases . . . ." Wray had in the course of his duties observed approximately 100 to 150 knife wounds located on hands and feet. He testified he had experience seeing defensive wounds.

The prosecutor inquired:

> Now, do you have an opinion on whether these scratches on Latoya Mitchell's hand are consistent with knife wounds or fighting off a knife attack?

Over appellant's objection Wray responded:

> Only thing I can say is that those injuries in how she described her position won't [sic] be consistent with where I think wounds would be.

Wray opined he would expect the wounds to be on her arms, not her hands. At trial, Wray demonstrated appellant's reenactment of her arm position during the alleged knife swinging. Photos of appellant's scratched hand were also introduced at trial.

This appeal follows.

## ANALYSIS

On appeal, appellant contends the trial court erred in finding Investigator Wray had sufficient qualifications to testify as an expert witness and that expert testimony was not needed because that testimony was within the common knowledge of the jury. We disagree.

> "[T]he question of the qualification of a witness to speak as an expert lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness was not qualified." Ames & Webb, Inc. v. Commercial Laundry Co., 204 Va. 616, 621, 133 S.E.2d 547, 550 (1963). A witness is qualified to speak as an expert where "he possesses sufficient knowledge, skill or experience to make him competent to testify . . . on the subject matter of the inquiry." Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979).

Nichols v. Commonwealth, 6 Va. App. 426, 431-32, 369 S.E.2d 218, 221 (1988). "All that is necessary for a witness to qualify as an expert is that he have 'sufficient knowledge of his subject

to give value to his opinion' and that he be better qualified than the jury to form an inference from the facts." Kern v. Commonwealth, 2 Va. App. 84, 86, 341 S.E.2d 397, 399 (1986) (quoting Norfolk & W. R. Co. v. Anderson, 207 Va. 567, 571, 151 S.E.2d 628, 631 (1966)).

> "An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation in a special calling give the expert knowledge of a subject beyond that of persons of common intelligence and ordinary experience. The scope of such evidence extends to any subject in respect of which one may derive special knowledge by experience, when his knowledge of the matter in relation to which his opinion is asked is such, or is so great, that it will probably aid the trier in the search for the truth."

Nichols, 6 Va. App. at 431, 369 S.E.2d at 220-21 (quoting Neblett v. Hunter, 207 Va. 335, 339-40, 150 S.E.2d 115, 118 (1966)).

While Investigator Wray had no formal instruction on defensive knife wounds, such training is not required. See Utz v. Commonwealth, 28 Va. App. 411, 424, 505 S.E.2d 380, 386 (1998) ("'Specialized formal training is unnecessary, . . . [and] experience alone [can] qualify one as an expert.'" (quoting People v. Ayala, 567 N.E.2d 450, 455 (Ill. App. Ct. 1990))). "Any argument that [the witness] lacked experience in the field [goes] to the weight that the trier of fact [gives] to [his] opinion, not to its admissibility." Kern, 2 Va. App. at 86, 341 S.E.2d at 399.

Appellant challenges the accuracy of Wray's testimony because it does not consider the movements of appellant and Spain during the encounter on the balcony, the relative heights of the two women, or Spain's reach. Appellant further maintains Wray assumed Spain struck appellant with the knife when appellant's arms were over her head. However, appellant did not raise this specific issue below and we will not consider it for the first time on appeal. Rule 5A:18.

Here, we find the trial court did not abuse its discretion in accepting Investigator Wray's qualifications. Wray had extensive experience as a homicide detective, investigating between 100-150 stabbings involving "knife wounds on hands or feet or any extremity."

His testimony was narrow in scope. He did not testify whether the wounds to appellant's hands were defensive wounds, only where he expected the wounds to be. This testimony was within Wray's expertise.

Appellant next argues it was improper to use expert testimony when the jury was as capable as Investigator Wray in drawing conclusions as to the defensive wounds.

> [E]xpert testimony concerning matters of common knowledge or matters as to which the jury are as competent to form an opinion as the witness is inadmissible. Where the facts and circumstances shown in evidence are such that men of ordinary intelligence are capable of comprehending them, forming an intelligent opinion about them, and drawing their own conclusions therefrom, the opinion of an expert based upon such facts and circumstances is inadmissible.

Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803-04 (1979). As in determining the qualifications of an expert witness, abuse of discretion is our standard of review. Thorpe v. Commonwealth, 223 Va. 609, 614, 292 S.E.2d 323, 326 (1982).

Thus, our inquiry is whether subject matters of testimony are beyond the knowledge of persons of common intelligence and ordinary experience. Put differently, we must consider whether the jury needed the expert testimony to determine if the location of the scratches was consistent or inconsistent with defensive wounds.

While a person of ordinary intelligence might know that the victim of a knife attack might attempt to ward off the attack, we find that the jurors would not be as competent as the expert to distinguish between defensive wounds and non-defensive wounds. Further, jurors would need the testimony of an expert to understand the location of defensive wounds and whether those wounds would be on appellant's hands or arms when appellant's arms were

crossed above her head.  See Holmes v. Doe, 257 Va. 573, 578, 515 S.E.2d 117, 120 (1999) ("Determining the conditions under which a vehicle will hydroplane requires an understanding of multiple variables that are not within the common knowledge of the average citizen."); Utz, 28 Va. App. at 426, 505 S.E.2d at 387 (holding trial court properly allowed expert testimony about gang culture because the subject matter was beyond the common knowledge and experience of ordinary jurors).  But see David A. Parker Enters. v. Templeton, 251 Va. 235, 237-38, 467 S.E.2d 488, 490 (1996) (holding in a personal injury action that a doctor's opinion whether a boat's propeller was rotating when it caused injury to the plaintiff invaded the province of the jury); Bd. of Supervisors v. Lake Servs., Inc., 247 Va. 293, 297, 440 S.E.2d 600, 602 (1994) (finding that whether Lake Services took reasonable precautions to avoid a collision between its barge and a known underwater obstruction involves matters of common knowledge and basic calculation and not the testimony of an expert); Kendrick v. Vaz, Inc., 244 Va. 380, 384, 421 S.E.2d 447, 449 (1992) (finding question of whether there was a hole in the ground in the area of the merry-go-round, which constituted an unreasonably dangerous condition, was not a proper subject for expert opinion).

Thus, we find the trial court did not abuse its discretion in ruling the expert testimony did not invade the province of the jury.

Affirmed.

Elder, J., concurring in the result.

I would assume without deciding the court erred in allowing Investigator Wray to testify as an expert on the subject of defensive wounds because I believe the error, if one occurred, was harmless under the facts of this case.

In determining whether an error is harmless, we review "the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991) (en banc). Non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. Although an appellate court applying harmless error analysis "does not weigh and balance the evidence in the role of fact finder to determine whether guilt has been proven beyond a reasonable doubt," the court "does evaluate how the error may have affected the weight of evidence and credibility of witnesses in deciding whether . . . 'the parties have had a fair trial on the merits and substantial justice has been reached.'" Lavinder, 12 Va. App. at 1011-12, 407 S.E.2d at 914-15 (Keenan, J., concurring) (quoting Code § 8.01-678). "'If, when all is said and done, [it is clear] that the error did not influence the jury, or had but slight effect, . . . the judgment should stand . . . .'" Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557, 1566-67 (1946)); see also Bonds v. Commonwealth, 226 Va. 534, 539, 311 S.E.2d 769, 772 (1984) (holding in pre-Clay case that "error in the admission of expert opinion may be harmless" in certain instances).

Here, the Commonwealth offered evidence that, prior to trial, appellant made four different statements regarding how the shooting occurred. Only the earliest version involved a claim that she put her hands over her head for protection and that she received the scratches on

her hand while trying to defend herself in this fashion. Further, after the court allowed Investigator Wray to testify as an expert that appellant's first version of events and the location of the scratches on her hand were not "consistent with where [he thought defensive] wounds would be," it instructed the jury as follows:

> I'll . . . give an instruction later telling you when you weigh the testimony of an expert witness, and this gentleman has more experience than the average lay person in looking at wounds in attack cases, but you must consider the basis for the opinion, and that's what we're going over now.

> If you think it's not sufficient to know anymore than you yourselves would need in estimating whether something is a defensive wound, you certainly may reject the testimony.

When appellant testified at trial, she made no claim that she raised her hands to protect herself or that the scratches on her hand were defensive wounds. Appellant testified instead that she did not believe the victim ever touched her with the knife the victim "was swinging," and appellant said she did not know how she sustained the scratches at issue. Appellant also denied ever telling Investigator Wray that she received the scratches while trying to shield herself from the victim's knife. Finally, appellant testified she pulled a gun from her waist and that she hit the victim with the gun, which then accidentally discharged. Once appellant testified, she was bound by this version of events. Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922) (noting that doctrine allowing party offering witnesses giving conflicting testimony to ask court to accept more favorable testimony is not applicable "to the testimony which [the litigant] gives himself" because "[n]o litigant can successfully ask a court or jury to believe that he has not told the truth").

In sum, Investigator Wray's opinion testimony pertained to only one of five versions of events the Commonwealth's evidence indicated appellant related about how the crime occurred and that opinion testimony was not relevant to the version appellant gave at trial, which was that

- 8 -

she did not raise her hands to defend herself, never told Investigator Wray she did so, and did not know how she sustained the scratches. To the extent Investigator Wray's opinion testimony about defensive wounds could have impacted the jury's view of appellant's credibility, any impact had to have been minimal when compared to Investigator Wray's testimony about the number of times appellant changed her story about what transpired, how she obtained the gun, and whether she pulled the trigger intentionally or accidentally. Thus, I believe the error, if one occurred, "'did not influence the [fact finder], or had but slight effect.'" Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566).

Accordingly, I agree that affirmance of appellant's convictions is appropriate, and I join the result reached by the majority.