COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


PAUL BRYAN LESTER
                                              OPINION BY
v.    Record No. 1023-98-2        JUDGE RUDOLPH BUMGARDNER, III
                                           AUGUST 31, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Donald W. Lemons, Judge

            Gregory W. Franklin, Assistant Public
            Defender (David J. Johnson, Public Defender,
            on brief), for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Paul Bryan Lester was convicted of burglary and grand

larceny.  Lester contends that the trial court erred (1) in

denying his motion to suppress, (2) in finding the evidence of

value sufficient to prove grand larceny, and (3) in finding the

evidence sufficient to prove he committed burglary.  We hold that

the trial court did not err as to the first two issues and that

the defendant is barred from raising the third issue.

Accordingly, we affirm the convictions.

                                I.

     Katharina Bergdoll testified that on October 22, 1997, she

returned to her home on South Pine Street and discovered that

someone had broken into her home.  The burglar had taken stereo

equipment, a shotgun, a pistol, a flintlock rifle, and a jewelry box containing several items of jewelry. The rifle was handmade and had Bergdoll's name engraved into it.

Within a week, Detective VanBuren received information from a "concerned citizen" about Paul Bryan Lester. Based on that information, the detective obtained a warrant to search a dwelling located one block from Bergdoll's home. He described the dwelling as a "rooming house" with a family living downstairs and several persons living in three bedrooms upstairs. When the detective and other officers went upstairs to search for the property, they encountered and detained Lester in one bedroom, several people in a second bedroom, and Amy Donovant in a third bedroom. The officers read to Lester the Miranda warnings and, after questioning him, determined that Lester and Donovant, whom Lester identified as his girlfriend, resided in the bedroom where Lester was found. Donovant's mother resided in another bedroom, and "a young lady" resided in the third bedroom.

In the bedroom where Lester and Donovant resided, the officers recovered from atop a dresser Bergdoll's jewelry case and a number of items of jewelry, such as earrings, beads, and rings, some of which had been stolen from Bergdoll's home. A music box that did not belong to Bergdoll was also on the dresser. Asked how the stolen property came to be in his room, Lester responded that he did not know and said, "[a] lot of people come in and out of the house." When the officers found

one of Bergdoll's rings on Donovant's finger and informed Lester that Donovant was wearing one of the stolen rings, Lester denied knowing where the ring came from.  None of Bergdoll's other property was recovered from the dwelling.  The shotgun was later recovered by the police from another person who was not identified on the record.

Lester was arrested and indicted for burglary and grand larceny.  The trial judge convicted Lester on both indictments. Lester appeals the convictions.

## II.

Prior to trial, Lester moved to suppress the stolen property recovered from his bedroom.  He contends the search was conducted without probable cause or his consent in violation of the Fourth and Fourteenth Amendments.

"[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation."  U.S. Const. amend. IV.  "The existence of probable cause is determined by examining the 'totality of the circumstances,'" Gwinn v. Commonwealth, 16 Va. App. 972, 974, 434 S.E.2d 901, 903 (1993) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)), and "may be established based upon a combination of the content of the information which the police possess, its degree of reliability, and the degree of credibility of the informer."  Boyd v. Commonwealth, 12 Va. App. 179, 187, 402 S.E.2d 914, 919 (1991). "Where the basis for concluding that probable cause exists rests upon information

provided by an informer, one focus of the inquiry must be upon whether the magistrate could determine the informer's honesty, veracity, and basis of knowledge."  Id. at 186, 402 S.E.2d at 918.  "If the informer is a disinterested citizen who is either the victim or eyewitness of a crime, the magistrate is permitted to infer that reasonable information obtained from the citizen is reliable."  Polston v. Commonwealth, 24 Va. App. 738, 745, 485 S.E.2d 632, 635 (1997), aff'd, 255 Va. 500, 498 S.E.2d 924 (1998).  Thus, we have ruled as follows:

> Citizen-informants do not carry the same presumption of reliability as police officers, but less evidence is required to establish their veracity than that of criminal informants.  A citizen-informant's veracity may be established by the absence of an apparent motive to falsify or independent police corroboration of the details provided by the informant.  Where a citizen-informant reports a crime committed in his presence, but in which he was not involved, or one in which he was a victim, police officers may act upon such a report if the reliability of the report is enhanced by a police interview with the victim or other corroborating information.

Corey v. Commonwealth, 8 Va. App. 281, 287, 381 S.E.2d 19, 22 (1989) (citations omitted).

At the suppression hearing, the detective's affidavit for the search warrant was entered in evidence.  It recited the following facts as constituting probable cause:

> Your affiant spoke with a concerned citizen (CC) and received the following information: Within the past 24 hours from 1400 hours on October 26, 1997, the CC saw a subject known

to them as "Paul Lester" with a flintlock rifle. The name Katharina Bergdoll was engraved on the rifle. The CC saw "Lester" carry the rifle into the residence mentioned in section two of this affidavit. "Lester" told the CC he was trying to sell the rifle and some unidentified jewelry. The CC is acquainted with "Lester" and said that "Lester" is a thief and sells stolen property.

To establish the concerned citizen's credibility and the reliability of the information, the detective reported the following facts:

The concerned citizen is a registered voter, has never been arrested, is a long time resident in the community, attends church, and is gainfully employed. The citizen provided information because of an interest in the community and wishes to remain anonymous out of fear of retaliation.

On October 22, 1997 at approximately 2030 hours, Ms. Katharina C. Bergdoll reported her home . . . had been burglarized. She reported the items mentioned in section three of this affidavit had been stolen. . . . She had been told by a local resident that her property had been stolen by a white male known as "Paul Lester."

In the past two weeks from October 26, 1997, Sergeant Roger A. Russell . . . spoke with a source who said a white male known as "Paul" was selling stolen property at the location described in section two of this affidavit. The items "Paul" was selling matched the items stolen in an unrelated burglary.

In the past two weeks from October 26, 1997, Officer Chester Roberts received information from a source that stolen property was being kept at the location described in section two of this affidavit.

The trial court denied Lester's motion, finding "that the magistrate had substantial basis for the issuance of the warrant and probable cause for the warrant to issue for the search of that residence."  In our review of the denial of the motion to suppress, "'[t]he burden [is] upon [the appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  Lewis v. Commonwealth, 26 Va. App. 113, 115, 493 S.E.2d 397, 398 (1997) (citation omitted).  On appeal, we pay "great deference" to the fact finding.  Gates, 462 U.S. at 236.

Applying these principles, we conclude that the trial court did not err.  Although the informant was never identified, the affidavit described the informant as a "concerned citizen" who "wish[ed] to remain anonymous out of fear of retaliation." According to the affidavit, the informant stated that he or she was acquainted with Lester, knew Lester to be a thief who sells stolen property, personally observed Lester carrying into the residence the rifle engraved with Bergdoll's name, and was told by Lester that Lester "was trying to sell the rifle and some . . . jewelry."  "[E]ven if we entertain some doubt as to an informant's motives, [the informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's] tip to greater weight than might otherwise be the case."  Id. at 234.

The police corroborated the informant's tip through their own investigation. Bergdoll informed the police she had received information that the person who robbed her home was known as "Paul Lester." Two other officers received information that someone known as "Paul" was selling stolen property from the dwelling where Lester lived. The detailed nature of the informant's tip, the informant's personal "basis of knowledge," and the corroborating evidence gathered by the police all combined to provide probable cause to justify a warrant. See Corey, 8 Va. App. at 288-89, 381 S.E.2d at 23. In short, "[t]he informant's story and the surrounding facts possessed an internal coherence that gave weight to the whole." Massachusetts v. Upton, 466 U.S. 727, 734 (1984) (per curiam).

III.

Lester argues that Bergdoll's testimony about the value of the stolen property amounted to guessing and failed to reveal the true value of the property. We disagree.

On an appeal challenging the sufficiency of the evidence, we view the evidence "in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Bergdoll testified as follows concerning the value of her property recovered from the bedroom:

            Jewelry case: $25-$30
            1 pair of lapis and silver earrings: $30
            1 pair of multiple beaded earrings: $30
            Handmade gold and bloodstone ring: $150
            5 pairs of earrings: $50

Bergdoll conceded on cross-examination that she did not know the

current market value of the jewelry case.  Rather, she testified

that the $25-$30 value represented what she would currently pay

for the jewelry case if she purchased it at a store.  She also

testified that she bought the handmade gold and bloodstone ring

in 1974 for $120 and that $150 was "a conservative estimate" of

the ring's current value.  The trial judge accepted Bergdoll's

valuations and found that the stolen property's value was

sufficient to prove grand larceny.

     "Any person who . . . commits simple larceny not from the

person of another of goods and chattels of the value of $200 or

more . . . shall be guilty of grand larceny."  Code § 18.2-95.

"The value of the goods specified in the statute is an essential

element of the crime, and the Commonwealth must prove that

element beyond a reasonable doubt."  Walls v. Commonwealth, 248

Va. 480, 481, 450 S.E.2d 363, 364 (1994).

            The value of the stolen property is measured
            as of the time of the theft, and the
            original purchase price may be admitted as
            evidence of its current value.  The opinion
            testimony of the owner of the stolen item
            generally is competent and admissible on the
            issue of the value of that property.

Parker v. Commonwealth, 254 Va. 118, 121, 489 S.E.2d 482, 483

(1997) (citation omitted).

Relying on the Supreme Court's decision in Dunn v.

Commonwealth, 222 Va. 704, 284 S.E.2d 792 (1981) (per curiam),

Lester argues that the value of $150 given by Bergdoll for the

handmade gold and bloodstone ring that she purchased for $120 is

unfounded.  In Dunn, the evidence proved that the accused stole

a typewriter which had been purchased ten years previously for

$150.  In finding the evidence insufficient to meet the

statutory threshold, the Court noted as follows:

> While the original purchase price of an item
> may be admitted as evidence of its current
> value, there must also be "due allowance for
> elements of depreciation."  Without a
> showing of the effect of age and wear and
> tear on the value of an item such as a
> typewriter, the [fact finder] might be
> misled to believe that original price equals
> current value.

Id. at 705, 284 S.E.2d at 792 (emphasis added) (citation

omitted).

The use of the words "such as a typewriter" in the above

quotation is significant.  It is common knowledge that technical

equipment generally depreciates in value over time and that

equipment which does not operate properly has significantly

reduced value.  However, in this case, the item was jewelry that

the fact finder was able to observe.  Lester was able to

cross-examine Bergdoll concerning the condition and value of the

jewelry.  No evidence proved the condition of the jewelry had

significantly deteriorated and that it had not appreciated in

value.  Dunn, therefore, is not controlling.

Lester also challenges the relevance of Bergdoll's testimony that several years prior to the larceny, she paid $30 each for the lapis and silver and the multiple beaded earrings. However, "it is generally held that evidence of value a reasonable time prior and subsequent to the [larceny] is admissible, its weight being for the trier of fact." Haynes v. Glenn, 197 Va. 746, 753, 91 S.E.2d 433, 438 (1956). The time between the earrings' original purchase date and the date of Bergdoll's testimony was not unreasonably long. Viewing the jewelry and absent evidence that the earrings were in a deteriorated condition, the trier of fact could have reasonably accepted Bergdoll's valuation. Lastly, the issue whether the remaining items of jewelry, identified only as five pairs of earrings, were truly valued at $50 is a question of fact. Nothing in the record tends to establish that $50 is such an unreasonable sum that we should overrule the finding of the trier of fact.

Because the evidence, as accepted by the trier of fact, sufficiently proved that the value of the jewelry exceeded $200, the evidence was sufficient to sustain the conviction of larceny. Thus, we need not address Lester's argument that Bergdoll's testimony concerning the replacement value of the jewelry case was inadmissible.

IV.

No direct evidence proved that Lester burglarized Bergdoll's home. On appeal, he argues that the evidence is insufficient to show that he possessed the recently stolen property found in his room. The defendant did not make this argument to the trial court. There he argued that the items found in his possession did not give rise to a presumption of breaking and entering, only to a presumption of larceny. He did not challenge the sufficiency of the evidence establishing the basic fact of the presumption, possession; indeed, he conceded the point. He did not preserve the argument he now raises, and he is barred from doing so by Rule 5A:18. See Taylor v. Commonwealth, 21 Va. App. 557, 565, 466 S.E.2d 118, 122 (1996) (appellant must have presented to trial court same grounds in support of claim of insufficiency that he wishes to raise on appeal) (citing Rule 5A:18).

For the reasons stated, the convictions are affirmed.

Affirmed.

Benton, J., dissenting, in part, and concurring, in part.

I concur in Parts I, II, and III of the majority opinion. I do not join in Part IV because I believe Paul B. Lester preserved for appeal the issue of sufficiency of the evidence to prove burglary. I also agree with Lester's contention that the evidence failed to prove he exclusively possessed the stolen property.

At the conclusion of all the evidence, Lester's counsel moved to strike the evidence regarding the burglary charge. In pertinent part, counsel argued as follows:

> Incorporating the motion to strike in regard to the close of all of the evidence. In terms of the breaking and entering, Your Honor, I would submit to the Court there has been no evidence tying Mr. Lester to that location on October 22nd.
>
> We have a detective who has testified that there were no fingerprints recovered, nothing to show he was actually there. And the mere possession of recently stolen property has no presumption in regard to a break and enter.

On this appeal, Lester contends the evidence was insufficient to prove the burglary charge because the evidence neither proved he was present at the burgled residence nor proved he had exclusive possession of the stolen property.

No direct evidence proved that Lester burgled Katharina Bergdoll's home. We are guided by the following principles concerning the circumstantial evidence in this case:

> [W]hen evidence has been introduced, which,
> if believed, establishes that a house has
> been broken and entered and goods stolen
> therefrom, and warrants an inference beyond
> a reasonable doubt that the breaking and
> entering and the larceny of the goods were
> committed at the same time, by the same
> person or persons, as a part of the same
> transaction, upon principle and authority,
> the exclusive possession of the stolen goods
> shortly thereafter, unexplained or falsely
> denied, has the same efficiency to give rise
> to an inference that the possessor is guilty
> of the breaking and entering as to an
> inference that he is guilty of the larceny.

Drinkard v. Commonwealth, 163 Va. 1074, 1083, 178 S.E. 25, 28 (1935). "It is well settled that the unexplained possession of recently stolen property creates a presumption of guilt, but such possession must be exclusive on the part of the accused." Leebrick v. Commonwealth, 198 Va. 365, 367, 94 S.E.2d 212, 214 (1956). Thus, "the evidence must reveal that the accused was consciously asserting at least a possessory interest in or exercising dominion over the stolen property." Ferrell v. Commonwealth, 11 Va. App. 380, 388, 399 S.E.2d 614, 618 (1990). Additionally, an accused can jointly possess stolen property with another. See Castle v. Commonwealth, 196 Va. 222, 227, 83 S.E.2d 360, 363-64 (1954). However, "[t]he Commonwealth must prove by the evidence, beyond all reasonable doubt, that the possession was exclusive; that it was personal; that it was recent and that it was unexplained." Id. (emphasis added).

Viewed in the light most favorable to the Commonwealth, the evidence proved that property recently stolen from Bergdoll's

home was found by police in the bedroom where Lester and Amy Donovant resided. The officers recovered from atop a dresser Bergdoll's jewelry case and a number of items of women's jewelry, such as earrings, beads, and rings, some of which had been stolen from Bergdoll's home. A music box that did not belong to Bergdoll was also on the dresser. Asked how the stolen property came to be in the room, Lester responded that he did not know and said, "[a] lot of people come in and out of the house." When the officers found one of Bergdoll's rings on Donovant's finger and informed Lester that Donovant was wearing one of the stolen rings, Lester denied knowing the origin of the ring. None of Bergdoll's other property was recovered from the dwelling.

Proof that Donovant resided in the room where the jewelry was located and was wearing one of the stolen rings creates a reasonable doubt that Lester exclusively possessed the stolen property. See Best v. Commonwealth, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981) (per curiam) (holding that exclusive possession was not proved where "the evidence revealed that several persons other than the accused had access to the open shed where the stolen property was found"); Leebrick, 198 Va. at 367, 94 S.E.2d at 213 (holding that where stolen property was located under a porch where the defendants slept, the evidence "falls far short of proving that the defendants . . . had exclusive possession of, or claimed a property interest in . . .

any of the stolen articles"); Castle, 196 Va. at 228, 83 S.E.2d at 364 (holding that "[t]he mere fact that stolen articles are found on the premises of a man of a family or in a place to which others have free access, without a showing of his actual conscious possession thereof, . . . is not sufficient to justify an inference of guilt").  The evidence in the record fails to exclude the reasonable inference that Lester was unaware that the property was stolen or that Donovant, who shared the room, possessed the property and placed it on the bedroom dresser.

> "[T]o raise the presumption of guilt from the possession of the fruits of [or] the instruments of crime by the [accused] it is necessary that they be found in his exclusive possession.  A constructive possession, like constructive notice or knowledge, though sufficient to create a civil liability, is not sufficient to hold the [accused] to a criminal charge.  He can only be required to account for the possession of things which he actually and knowingly possessed, as, for example, where they are found upon his person, or in his private apartment, or in a place of which he kept the key.  If they are found upon premises owned or occupied as well by others as himself, or in a place to which others had equal facility and right of access, there seems no good reason why he, rather than they, should be charged upon this evidence alone."

Tyler v. Commonwealth, 120 Va. 868, 871, 91 S.E. 171, 172 (1917) (emphasis added) (citation omitted).

Furthermore, the Commonwealth's claim that Lester jointly possessed the jewelry with Donovant was not proved beyond a reasonable doubt.  As the Court observed in Reese v.

Commonwealth, 230 Va. 172, 175, 335 S.E.2d 266, 267-68 (1985), "[t]he Commonwealth presented no evidence that [Lester] exercised any degree of dominion or control over the [stolen property]." Lester claimed no knowledge of the stolen property and responded to the officers' questions by noting that a number of people had access to the bedroom. The Commonwealth's own evidence proved that the dwelling was a "rooming house" where a number of persons resided. Although the police initially detained Donovant in another person's bedroom when they executed the search warrant, Donovant was wearing one of Bergdoll's stolen rings, and she resided in the bedroom where the remainder of Bergdoll's jewelry was recovered. Donovant's mother lived in another bedroom on the same floor.

These facts fail to establish that Lester possessed the woman's jewelry. "To establish 'possession' in a legal sense it is not sufficient to simply show actual or constructive possession of the [stolen property] . . . by the defendant [because the] Commonwealth must also establish that the defendant intentionally and consciously possessed it with knowledge of its nature and character." Buono v. Commonwealth, 213 Va. 475, 476, 193 S.E.2d 798, 798-99 (1973) (per curiam).

Because no evidence proved beyond a reasonable doubt that Lester exclusively or jointly possessed the jewelry or exercised any dominion or control over it, the evidence was insufficient

to prove that he burgled Bergdoll's home.  Therefore, I would reverse the burglary conviction.