PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, McCullough and Senior Judge Clements
Argued at Chesapeake, Virginia

LEVIN GRIMES

OPINION BY
v.     Record No. 0293-13-1     JUDGE STEPHEN R. McCULLOUGH
OCTOBER 29, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Randolph T. West, Judge Designate

Charles E. Haden for appellant.

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

We address two issues in this appeal: whether the Commonwealth established that the

copper pipes stolen by Levin Grimes, appellant in this case, had a value of $200 or more and

whether the defendant is guilty of burglary when he broke and entered into a walled-in crawl space

that is integrated into the walls of the dwelling house itself. We conclude that the Commonwealth's

evidence does not establish the value of the copper pipe, and we reverse appellant's convictions for

grand larceny, conspiracy to commit grand larceny, larceny with the intent to sell or distribute

property with a value of $200 or more, and conspiracy to commit larceny with the intent to sell or

distribute property with a value of $200 or more. We affirm, however, his conviction for statutory

burglary.

BACKGROUND

The house located at 6207 Roanoke Avenue in the City of Newport News had been

unoccupied since the death of its resident. On the afternoon of June 18, 2012, two neighbors,

Geraldine Sykes and Joan Taylor, walked over to the house to "look it over." Taylor was interested

in purchasing the property as an investment. They walked around to the back of the house. While there, they heard a "clanging" noise coming from under the house. When they heard the noise again, they concluded that someone must be under the house. Taylor went to call the police. The door leading to the crawl space was "ajar just a little bit."

A man came out from the crawl space. He began to place items in the back of a truck. Appellant also emerged from the crawl space. He was carrying copper pipe under his arm. He told Sykes, "ma'am, the lady said I could have this pipe." Appellant then proceeded to walk away from the house at a fast pace down the street, dropping items of pipe along the way.

A police officer soon arrived. The officer observed one man placing a black garbage bag that had several pipes protruding from the back into a truck. He also observed a second man, later identified as appellant, walking away. This individual was carrying copper pipe. The officer could observe several pieces of copper pipe fall to the ground. The officer summoned appellant, but he continued to walk away.

Another officer stopped appellant. Appellant was covered in wet mud and sand. At the time, he was still carrying an armful of copper pipe. When the police searched appellant, he had three cutting or grabbing tools on his person, along with a flashlight.

There were copper pipes scattered throughout the backyard of 6207 Roanoke Avenue and additional pipes near the crawl space. The door to the crawl space was open. The lock on that door had been cut. Police noticed additional pieces of copper pipe on the street. Still more detached pipes were found inside the crawl space. In all, police recovered 106 pounds of copper pipes. Police impounded and searched the truck that was parked next to the house. Inside they found wire cutting instruments, pipe cutting tools, and pliers.

Appellant stated that he had found the pipes in a dumpster nearby. He could not, however, say where this dumpster was located. Police searched the area and could not find any dumpsters. Appellant also denied that he was ever at the property on Roanoke Avenue.

At trial, the Commonwealth sought to elicit expert testimony from Detective Brad Rodgers to establish the value of scrap metal. The court held that Rodgers was not an expert and struck his testimony concerning the value of the copper pipe as scrap metal. The Commonwealth also presented testimony from Alethea Anthony, a bank employee who served as the executor of the estate that included the home on Roanoke Avenue. Anthony stated that the bank paid $4,700 to repair and replace the pipes. James Austin, of Austin Family Repairs, testified that he repaired the damaged pipes. He explained that the hot and cold pipes were made of copper. He testified that due to the age of the house, the drainage pipes were made of brass. He explained that brass is no longer in use. Austin paid approximately $950 for the copper pipes he installed in the home.

Appellant was charged with grand larceny, conspiracy to commit grand larceny, larceny with the intent to sell or distribute property with a value of $200 or more, conspiracy to commit larceny with the intent to sell or distribute property with a value of $200 or more, felony destruction of property, statutory burglary, and possession of burglary tools.[1]

At the close of the evidence, counsel moved to strike the evidence, arguing that the Commonwealth did not establish the actual value of the pipes. With regard to the burglary, counsel argued that appellant did not go into the house proper, that he had, instead, gone *underneath* the house. The trial court overruled the objections and convicted appellant on all charges. He was later sentenced to serve a total of 47 years in prison, with 40 years suspended.

---

[1] We did not grant appellant's assignment of error challenging his convictions for possession of burglary tools and felony destruction of property. Accordingly, those convictions are not before us.

ANALYSIS

> When analyzing a challenge to the sufficiency of the evidence, [an appellate court] reviews the evidence in the light most favorable to the prevailing party at trial and considers any reasonable inferences from the facts proved. The judgment of the trial court will only be reversed upon a showing that it "is plainly wrong or without evidence to support it."

Wilson v. Commonwealth, 272 Va. 19, 27, 630 S.E.2d 326, 330 (2006) (quoting Code § 8.01-680) (citation omitted).[2]

## I. VALUE OF THE STOLEN COPPER PIPES

Appellant contends that the Commonwealth failed to establish a value of $200 or more for the stolen pipe. Each of the following charges required the Commonwealth to prove a value of $200 or more: grand larceny, Code § 18.2-95, conspiracy to commit grand larceny, Code § 18.2-23, larceny of property belonging to another with a value of $200 or more with the intent to sell or distribute such property, Code § 18.2-108.01, and conspiracy to commit larceny with the intent to sell or distribute, Code § 18.2-23. "This statutorily specified amount is an essential element of the offense, and the burden is upon the Commonwealth to establish that element by proof beyond a reasonable doubt." Robinson v. Commonwealth, 258 Va. 3, 5, 516 S.E.2d 475, 476 (1999) (discussing grand larceny).

The value of an item is determined by its

> market value, and particularly retail value. "Fair market value is the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no

---

[2] The Commonwealth argues that, as a threshold matter, appellant's brief does not contain sufficient argument and authority. At oral argument, counsel for appellant explained that portions of his argument on the issue of value that were included in his petition for appeal were inadvertently omitted from his brief. Upon review of the brief and the petition for appeal filed with this Court, we conclude that the argument before us is sufficient to enable us to reach the issue. We also reject the Commonwealth's argument that appellant's assignment of error is deficient. It squarely presents the question of the value of the stolen goods.

> necessity of purchasing." And the original purchase price of an item is admissible as evidence of its current value.

Id. at 5-6, 516 S.E.2d at 476 (quoting Bd. of Supervisors v. Donatelli & Klein, Inc., 228 Va. 620, 628, 325 S.E.2d 342, 345 (1985)). It is the "current value" of the stolen items that must be established. Dunn v. Commonwealth, 222 Va. 704, 705, 284 S.E.2d 792, 792 (1981) (per curiam). This current value is "measured as of the time of the theft." Parker v. Commonwealth, 254 Va. 118, 121, 489 S.E.2d 482, 483 (1997). Where an item has no market value, the Commonwealth must prove "actual value." Baylor v. Commonwealth, 55 Va. App. 82, 88, 683 S.E.2d 843, 845 (2009).

Here, the Commonwealth presented no evidence of the market value of the stolen copper pipes. The Commonwealth attempted to present testimony concerning the scrap value of the pipes, but that testimony was excluded. Therefore, there is no evidence concerning actual value.

Although the Commonwealth did not present testimony concerning the market or actual value of the copper pipe, it did present testimony with regard to replacement cost.[3] In some situations, "replacement value can properly be considered in establishing actual value." Little v. Commonwealth, 59 Va. App. 725, 733, 722 S.E.2d 317, 320 (2012). Replacement value does not operate as a substitute for market value. Rather, replacement value can, in certain circumstances, afford the fact finder a basis from which to draw inferences about the market value of the stolen item. See id. at 733, 722 S.E.2d at 321. In Little, for example, we concluded that replacement value was relevant to establish the value of stolen "demo" phones because the fact finder sensibly could infer that these phones were current models in good working condition. Id. Replacement value in the present context is more problematic. There was no testimony concerning the age or condition of the stolen copper pipes. The photographs of the pipes that were introduced at trial indicate that the

---

[3] The Commonwealth notes that the bank spent $4,700 to restore the plumbing to working condition. The cost of the labor required to install replacement pipes, while certainly germane when considering restitution, is irrelevant to establishing the value of the stolen pipes.

- 5 -

pipes were well worn. Therefore, it is impossible to conclude, as we did in <u>Little</u>, that replacement value afforded the fact finder an appropriate basis from which to make a commonsense judgment about the actual value of the old stolen pipes.

The Commonwealth also notes that certain items, like jewelry, tend to hold their value over time. <u>See</u> <u>Lester v. Commonwealth</u>, 30 Va. App. 495, 505, 518 S.E.2d 318, 322-23 (1999). We have held, for example, that evidence of the original purchase price of jewelry that is in good condition is relevant to establish its current value, provided that only a reasonable amount of time has passed since the jewelry's purchase. <u>Id.</u> at 505-06, 518 S.E.2d at 323. Copper pipes are not analogous to jewelry, which generally is cherished and protected from damage. Although copper pipes are durable, they can be worn out and damaged over time.[4]

With no evidence in the record concerning the age of the pipes or their condition, we conclude that the Commonwealth failed to establish that the stolen copper pipes had a market or actual value of $200 or more.[5]

> [W]here, as here, there is an absence of evidence linking replacement value to an accurate determination of actual or fair market value, mere evidence of replacement value alone is insufficient as a matter of law to support an inference by the fact finder that the value of stolen property necessarily exceeds the statutory threshold.

<u>Baylor</u>, 55 Va. App. at 90, 683 S.E.2d at 846-47. Because appellant's convictions for grand larceny, conspiracy to commit grand larceny, larceny with the intent to sell or distribute property

---

[4] The Commonwealth argues that it should not be limited to proving the scrap metal value of the copper pipe where the defendant destroyed the value of the pipe by cutting it and removing it in sections. We do not reach this argument here because the Commonwealth failed to establish either the fair market value or the actual value of the stolen pipe, before or after it had been damaged by appellant and his accomplice.

[5] Appellant also argues that the evidence does not exclude the possibility that another individual committed the crime. On the evidence before us, this argument is devoid of merit. Moreover, it is not encompassed by appellant's assignment of error, which focuses exclusively on value.

with a value of $200 or more, and conspiracy to commit larceny with the intent to sell or distribute property with a value of $200 or more all required the Commonwealth to establish a value of $200 or more, we reverse and remand those convictions.[6]

## II. CRAWL SPACE THAT IS ENCLOSED WITHIN THE WALLS OF THE HOUSE CONSTITUTES PART OF THE DWELLING

Appellant argues that he is not guilty of the crime of burglary because, "[a]t most, the evidence established that he crawled under the residence, which is not the same thing as entering the residence." Appellant's Br. at 28. Code § 18.2-91 provides in relevant part that "[i]f any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny . . . he shall be guilty of statutory burglary." The act mentioned in Code § 18.2-90, as relevant here, is breaking and entering in a dwelling house in the daytime. A "dwelling house is a house that one uses for habitation, as opposed to another purpose." Giles v. Commonwealth, 277 Va. 369, 375, 672 S.E.2d 879, 883 (2009). Appellant does not contest that the residence here constitutes a dwelling house.[7]

The question before us is one of statutory interpretation. We review *de novo* such questions of law. Young v. Commonwealth, 273 Va. 528, 533, 643 S.E.2d 491, 493 (2007). When interpreting a statute, we seek to determine the General Assembly's intent by the words used in a statute, and when a statute is unambiguous, we are bound by the plain meaning of its language. Commonwealth v. Diaz, 266 Va. 260, 264-65, 585 S.E.2d 552, 554 (2003). In analyzing the statute, we give each word "'its ordinary meaning, given the context in which it is

---

[6] The parties have not consented to a remand for a new sentencing hearing. Therefore, we remand for a new trial. See Commonwealth v. South, 272 Va. 1, 630 S.E.2d 318 (2006); Britt v. Commonwealth, 276 Va. 569, 576, 667 S.E.2d 763, 766 (2008).

[7] In light of our holding, we do not reach the Commonwealth's alternative contention that the crawl space constitutes part of a "building permanently affixed to realty" under Code § 18.2-90.

used.'" Sansom v. Bd. of Supervisors, 257 Va. 589, 594-95, 514 S.E.2d 345, 349 (1999) (quoting Dep't of Taxation v. Orange-Madison Coop. Farm Serv., 220 Va. 655, 658, 261 S.E.2d 532, 533-34 (1980)). "[P]enal statutes are to be strictly construed against the Commonwealth and in favor of a citizen's liberty." Fullwood v. Commonwealth, 279 Va. 531, 536, 689 S.E.2d 742, 746 (2010). "Even though any ambiguity or reasonable doubt as to the meaning of a penal statute must be resolved in favor of an accused, nevertheless a defendant is not entitled to benefit from an 'unreasonably restrictive interpretation of the statute.'" Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 357 (1980) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

The record establishes that the crawl space of the house is enclosed within the walls of the house. Access to the crawl space is through a separate exterior door that is built into the lower part of one of the exterior walls of the dwelling house. The crawl space thus physically constitutes part of the "dwelling house." The plain language of the applicable statutes does not exclude from their scope any of the spaces that are encompassed within the walls of the dwelling house. Appellant's actions thus satisfied the terms of the statute: he broke and entered in a dwelling house during the daytime. Moreover, the facts establish a breaking and entering – the lock placed on the door to the crawl space was severed, and appellant had entered the crawl space.

Our conclusion is consistent with the conclusion we reached in Lacey v. Commonwealth, 54 Va. App. 32, 675 S.E.2d 846 (2009). There, the defendant had entered the residential area of the dwelling through a garage. The garage shared brickwork and a roof with the first floor of the house. Id. at 35, 675 S.E.2d at 848. We concluded that the garage constituted "part of the dwelling house for purposes of the burglary statute." Id. at 43, 675 S.E.2d at 852. It is true that, unlike the garage at issue in Lacey, there is no evidence that the crawl space here connects with

the interior of the home, nor is the crawl space employed for "ordinary household functions." <u>Id.</u> The absence of these factors, however, is not dispositive. A burglar who breaks and enters a structure encompassed within the walls of a dwelling house has satisfied the plain language of the statute. Moreover, our conclusion accords with the purpose of the burglary statutes, which is to protect the sanctity of the home. Accordingly, we affirm appellant's conviction for statutory burglary.

CONCLUSION

We affirm appellant's conviction for burglary.[8] We reverse and remand his remaining convictions for a new trial on lesser charges, should the Commonwealth, in its discretion, elect to retry him.

<u>Affirmed, in part and
reversed and remanded, in part.</u>

---

[8] The trial court imposed restitution in the amount of $4,700 in connection with appellant's burglary conviction. Appellant does not challenge the restitution component of his burglary conviction. Because we affirm appellant's burglary conviction, the restitution component of appellant's burglary sentence is not disturbed by our holding.