COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Athey and Chaney
Argued at Norfolk, Virginia


HEATH WADE BRILEY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1151-21-1           JUDGE VERNIDA R. CHANEY
                                                     AUGUST 2, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge

Samantha O. Thames, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Chesapeake ("trial court")

convicted Heath Wade Briley ("Briley") of burglary in violation of Code § 18.2-91, grand

larceny in violation of Code § 18.2-95 (amended 2020), and larceny with the intent to sell or

distribute in violation of Code § 18.2-108.01 (amended 2020).[1] On appeal, Briley contends that

the trial court erred in denying his motions to strike because the evidence is insufficient to prove

the elements of an actual breaking for the burglary and the value of the stolen items for grand

larceny. Briley also argues that the trial court abused its discretion in excluding evidence of his

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] At the time of the offenses here, Code §§ 18.2-95 and 18.2-108.01 set the monetary threshold for felony larceny at $500. Effective July 1, 2020, the monetary threshold for grand larceny and larceny with the intent to sell or distribute increased to $1,000. *See* 2020 Va. Acts chs. 89, 401.

complete statement to the police.  For the following reasons, this Court affirms the trial court's judgment.

## I. BACKGROUND

On the morning of January 18, 2019, when Cassandra Sawyer ("Sawyer") and her children left their home, she shut and locked the front door.  Later that day, Sawyer's son arrived home to a missing Nintendo Switch ("Switch") gaming console that Sawyer had purchased days before Christmas.  A few hours later, Sawyer came home from work and realized that four Switch games and over twenty Nintendo 3DS games were also missing.[2]  The Switch and accompanying games, previously located less than three feet apart, had been kept in the son's bedroom.  Suspecting foul play, Sawyer contacted the police.  According to an eyewitness, the neighbor's sister, a male later identified as Briley was seen walking back and forth on Sawyer's porch around 9:50 a.m. that morning.

At trial, Sawyer testified she purchased the Switch from GameStop for about $320 to $330 and paid between $59 and $69 for two Switch games.[3]  Sawyer also testified each Nintendo 3DS game was priced from $5 to $40.  Sawyer's estimates were corroborated by a GameStop manager, who testified about average game prices.  In addition to selling games, the manager testified that GameStop also accepts trade-in devices and games.  Approved trade-in transactions are entered into the store's pawn tracking system that law enforcement can access.  Detective Alexander used this tracking system to trace Sawyer's Switch to GameStop.  Briley was later

---

[2] Sawyer testified that based on her visual observation of her son's gaming pack, it held about fifty games.

[3] Sawyer testified about two of the four missing Switch games since the other two had been purchased by other family members.

- 2 -

identified, on store surveillance video, as the individual who sold the Switch and four games on the same day as the burglary at 12:29 p.m.

Initially, Briley denied selling the items, but he later confessed. On cross-examination, Briley sought to elicit testimony from Detective Alexander about the excluded portion of his earlier statement that he had received the games from 7-Eleven. The trial court sustained the Commonwealth's objection and did not allow the evidence.

The trial court granted Briley's motion to strike for obtaining money by false pretense; however, it denied Briley's other motions to strike. The trial court found that the evidence was sufficient to prove the burglary and larceny offenses.

II. ANALYSIS

A. Standards of Review

"When presented with a sufficiency challenge in criminal cases, [this Court] review[s] the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (citing *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). In doing so, we discard any of Briley's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"This Court reviews a [circuit] court's ruling admitting or excluding evidence for abuse of discretion." *Payne v. Commonwealth*, 292 Va. 855, 866 (2016) (citing *Lawlor v. Commonwealth*, 285 Va. 187, 229 (2013)). This Court does not substitute its judgment for that of the circuit court, but "consider[s] only whether the record fairly supports the [circuit] court's action." *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "However, '[a circuit] court by definition abuses its discretion when it makes an error of law . . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (alterations in original) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

### B.  The Evidence is Sufficient to Prove Breaking.

Briley challenges his conviction for statutory burglary, alleging that the evidence was insufficient to prove a breaking. "To sustain a conviction for statutory burglary under Code § 18.2-91, the Commonwealth must prove: (1) the accused . . . broke and entered the dwelling house in the daytime; and (2) the accused entered with the intent to commit any felony other than murder, rape, robbery or arson." *Robertson v. Commonwealth*, 31 Va. App. 814, 820-21 (2000) (citation omitted). Breaking "may be either actual or constructive." *Johnson v. Commonwealth*, 221 Va. 872, 876 (1981) (quoting *Davis v. Commonwealth*, 132 Va. 521, 523 (1922)). An actual breaking is the use of force, however slight, to enter. *Doan v. Commonwealth*, 15 Va. App. 87, 99 (1992) (citation omitted). "'Merely pushing open a door, turning the key, lifting the latch, or

resort to other slight physical force is sufficient to constitute this element of [burglary],' so long as those acts 'resulted in an entrance contrary to the will of the occupier of the [property].'" *Finney v. Commonwealth*, 277 Va. 83, 88 (2009).

Briley contends that the evidence was insufficient to prove an actual breaking to enter Sawyer's home because the door was previously broken and open when she arrived home.[4]  In support of his contention, Briley relies on Sawyer's testimony about the door.  Sawyer testified that she "shut the door" and locked it when she and her children left for school at 7:45 a.m.  However, she admitted that "the doorknob locks, but if you shook it hard enough, the door would open."  Sawyer also testified the door was open when she arrived in the afternoon—despite her children having come home earlier.

In reviewing the evidence in the light most favorable to the Commonwealth, Sawyer's testimony that she shut and locked the door, coupled with the eyewitness evidence that Briley was observed on the porch that morning after Sawyer left, is sufficient evidence to prove the element of breaking.  Despite Briley's contention, a rational fact-finder could find that a breaking had occurred, although there was evidence the door had not functioned properly and was already open upon Sawyer's arrival home.

On cross-examination, Briley elicited testimony from Sawyer that the door did not seal shut but opened if enough force was applied.  Even if the evidence supported Briley's argument that the door was open, the evidence was sufficient to permit the trial court to find that a breaking had occurred when the door was opened even more.  The force involved may indeed be very slight.  *See Phoung v. Commonwealth*, 15 Va. App. 457, 460 (1992) (finding widening of an already slightly open glass door sufficient to prove breaking); *see also Johnson*, 221 Va. at

---

[4] It is undisputed that Briley did not have permission to enter Sawyer's home on January 18, 2019, and there is no evidence of constructive breaking.

- 5 -

875-76 (finding sufficient evidence of an actual breaking where the door was open one foot so that defendant had to push it open further to get inside). Accordingly, the trial court did not err in denying the motion to strike the burglary charge.

### C. The Evidence is Sufficient to Prove Value.

Briley challenges his convictions for grand larceny and larceny with the intent to sell or distribute, alleging that the evidence was insufficient to prove that the value of the stolen property was $500 or more.[5]

"Where the value of a thing 'determines the grade of the offense, the value must be alleged and the Commonwealth must prove the value to be the statutory amount.'" *DiMaio v. Commonwealth*, 46 Va. App. 755, 763 (2005) (quoting *Wright v. Commonwealth*, 196 Va. 132, 139 (1954)), *aff'd*, 272 Va. 504 (2006). The Commonwealth may offer testimony of a lay person or an expert to prove value. *Id.* at 764. "The value of an item is determined by its market value, and particularly retail value." *Grimes v. Commonwealth*, 62 Va. App. 470, 476 (2013). "Fair market value is the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing." *Id.* at 477 (quoting *Robinson v. Commonwealth*, 258 Va. 3, 5-6 (1999)).

As the owner, Sawyer testified the value of the Nintendo Switch game console was $299 and the Nintendo 3DS game console was $200, if new, and "about 150, 100 bucks" used. As for the stolen games, she testified the four Switch system games ranged from $59 to $69, and each

---

[5] The Commonwealth contends that "Briley's argument that the evidence was insufficient to prove he was the perpetrator of the theft of the Nintendo 3DS and 20 games is not encompassed by his assignment of error." However, "[a]s an appellate court, we seek 'the best and narrowest ground available' for our decision." *Castillo v. Commonwealth*, 70 Va. App. 394, 429 n.12 (2019) (quoting *Harvey v. Commonwealth*, 65 Va. App. 280, 285 n.2 (2015)). We conclude that resolving the merits of Briley's sufficiency issue constitutes the narrowest and best ground of decision. Therefore, we assume, without deciding, that the issue of Briley being the perpetrator of the theft of all of the stolen gaming equipment and games is preserved on appeal.

- 6 -

of the more than twenty Nintendo games ranged from $5 to $40.  The GameStop manager also testified most Switch games retail for $59.99 and have a trade-in value of $25 to $35.

Here, the trial court combined the estimated values of the Switch, Nintendo 3DS, and related games to calculate the total value of the stolen property.  The trial court found, "the Switch, the two video games that have been conceded to as to value, $59 each, or 59.99 or $60, what have you—that comes up to $428 if you add *Battle Crash* [game], the payout."  The court also found "3DS [was] valued at $200" but valued "20 or so games" "at a minimum of $5 a piece."  According to the trial court's finding, which is supported by the evidence, the total value of the stolen consoles and games was $728.  Therefore, in reviewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to prove the value of the stolen items was over $500.

Briley contends that the trial court erroneously considered the value of the Nintendo 3DS system and its related games in determining the statutory threshold amount because the evidence failed to prove he was in possession of those items.  Briley relies on *Johnson v. Commonwealth*, 141 Va. 452 (1925), and *Henderson v. Commonwealth*, 215 Va. 811 (1975), for his argument that each of the Nintendo 3DS and Nintendo Switch consoles and games were separate, distinctive "sets" of property that makes the inference that he stole both distinct sets unjustified. *Henderson*, 215 Va. at 813; *see also Johnson*, 141 Va. at 456 (both holding that proof of the defendant's possession of two tires of a set of four stolen tires demonstrates he had taken the other two).  However, in *Henderson*, the Supreme Court of Virginia held "the fact-finder '. . . may infer the stealing of the whole from the possession of part.'"  *Henderson*, 215 Va. at 813 (quoting *Johnson*, 141 Va. at 456).

Like *Johnson* and *Henderson*, Briley was found in possession of part of the items stolen from Sawyer's home.  The evidence reflects that similar items, the two gaming systems and their

games, were stolen from one room in the home, from under the same bed within that room, and the items were all kept together, less than three feet apart. Briley had previously visited and stayed in Sawyer's home and was seen alone on her porch the morning of the break-in and thefts. Then within hours, Briley sold some of the stolen items. When "property [is] taken at about the same time as that found in accused's possession," then "the possession of a part of the recently stolen property warrants the inference that accused stole all of it." *Williams v. Commonwealth*, 188 Va. 583, 597 (1948). "Such circumstances support an inference which leaves no room for reasonable doubt that the goods defendant possessed were the goods stolen." *Henderson*, 215 Va. at 813. Therefore, the trial court was permitted to infer that Briley stole both gaming systems and the associated games at the same time.

Assuming *arguendo* that the court properly attributed the stolen Nintendo 3DS gaming system and games to him, Briley argues that the evidence of value is insufficient because the court failed to consider the fair market value. To be convicted of grand larceny, the Commonwealth need only submit evidence sufficient to establish the stolen items were worth more than $500. The Commonwealth may offer testimony of a lay person or an expert to prove value. *DiMaio*, 46 Va. App. at 764. Here, the trial court found that the Switch and two video games were valued at $428. Thus, the Commonwealth only needed to prove the additional stolen items were valued at $72. At trial, Sawyer testified that she bought the Nintendo 3DS for $200. This Court has held that the "[o]riginal purchase price of an item is admissible as evidence of its current value." *Grimes*, 62 Va. App. at 477. It was within the province of the trial court to consider and determine the credibility of Sawyer's market-value testimony. Accordingly, the evidence sufficed for a reasonable trier of fact to find that the value of the stolen items satisfied the statutory requirement.

D.  Exclusion of Statement to Police was Harmless Error

Briley contends the trial court erred in excluding testimony that would have completed his statement to police.  In its case-in-chief, the Commonwealth, through Detective Alexander's testimony, introduced into evidence Briley's statements admitting he sold Sawyer's items.  On cross-examination, defense counsel expressly referred to Detective Alexander's conversation with Briley at the jail and asked, "[a]nd he also told you that he received the games from 7-Eleven, is that correct?"  Upon objection, Briley argued that the answer he sought to elicit was admissible under the rule of completeness.[6]

Under the common law rule of completeness, a party "against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder."  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 (1988) (quoting 7 J. Wigmore, Evidence § 2113, p. 653 (J. Chadbourn rev. 1978)).  "The ancient rule in this Commonwealth is that the prosecution has no right to introduce selected portions of a defendant's confession and exclude those which tend to mitigate, justify, or excuse the offense charged."  *Boggs v. Commonwealth*, 229 Va. 501, 517 (1985) (quoting *Brown v. Commonwealth*, 36 Va. (9 Leigh) 633, 634 (1838)); *see also* Va. R. Evid. 2:106.

Here, the Commonwealth elicited testimony from Detective Alexander that Briley admitted to selling the games.  In response, Briley sought to introduce the rest of the statements that he received the games, which he later sold, from a 7-Eleven.  However, assuming without deciding that Briley was entitled to have the fact-finder consider his complete statement, not just

_____

[6] The Commonwealth contends that Briley failed to preserve his third assigned error. Here, however, Briley's question functions as a proffer given its obvious intent to elicit an affirmative "yes" in response, if the officer had been allowed to testify.  Thus, the record is adequate to determine whether the trial court erred by excluding testimony or whether that exclusion was prejudicial.

the portion the Commonwealth selected to introduce into evidence, we conclude the trial court excluding the remainder of Briley's statement was harmless error.[7]

"[N]on-constitutional error is harmless 'when it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Lebron v. Commonwealth*, 58 Va. App. 540, 551 (2011) (alteration in original) (quoting *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005 (1991) (*en banc*)). Here, the error is excluding Briley's statement that he received the games, which he later sold, from a 7-Eleven. However, the record establishes that the error "plainly" did not affect the verdict and the evidence is clearly sufficient to prove the elements of the offenses beyond a reasonable doubt. The trial court expressly noted that a neighbor saw Briley at the burglary scene the same morning. The trial court reasonably inferred from the circumstantial evidence that Briley burglarized Sawyer's home and stole the video gaming items. Even if Briley's bare assertion to police that he received the items from 7-Eleven had been admitted, it would not have affected the outcome. Therefore, for these reasons, the error was harmless.

### III. CONCLUSION

The trial court did not err in denying Briley's motions to strike as the evidence is sufficient to support the convictions. Additionally, excluding testimony that would have completed Briley's statement to the police was harmless error. Accordingly, this Court affirms the trial court's judgment.

*Affirmed*.

---

[7] We conclude that harmless error review is the best and narrowest ground available for deciding this issue. *See Spruill v. Garcia*, 298 Va. 120, 127 (2019) (deciding the issue on appeal on the ground of harmless error).